## Hornek Brothers v. Strubel, by Next Friend.

(Decided January 29, 1926.)

### Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. Automobiles—Instruction Held Not to Require Finding for Plaintiff, if Jury Believed Driver Exceeded Speed of 15 Miles Per Hour.—In action for injuries to a child, run down by defendant's truck at a street intersection, where there was no proof overcoming presumption of Ky. Stats., section 2739g-51, that speed in excess of limitation therein specified was prima facie evidence of unreasonable and improper driving, that persumption became conclusive, and hence instruction that it was incumbent on defendant to run truck at such speed not exceeding 15 miles per hour as jury should believe was reasonable and proper considering the traffic was not

erroneous as requiring finding for plaintiff if jury believed defendant was driving in excess of that speed.

2. Automobiles—Burden on Defense to Show Speed in Excess of Statutory Limit was Reasonable.—In personal injury action, where, under Ky. Stats., section 2739g-51, subdivision 4, speed of defendant's truck in excess of 10 miles an hour was prima facie evidence of unreasonable and improper driving, duty devolved on defendant to show to the contrary.

3. Automobiles—Instruction on Sudden Appearance Defense to Action for Injury to Child Held Erroneous.—In action for injuries to child run down at crossing by automobile truck, an instruction predicating defendant's exoneration from liability if child suddenly appeared in pathway of truck, and so close that driver, in exercise of ordinary care, and by use of means at his command, was unable to avoid the collision, on necessity of defendant establishing that driver was then observing duties prescribed by the court as to speed, incumbent on him in management and operation of his machine, held erroneous, and prejudicial.

JOHN P. HASWELL and STEPHEN S. JONES for appellant.

EUGENE R. ATTKISSON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellant brings this appeal to reverse a judgment entered on a verdict in favor of the appellee for $1,608.00 for injuries received by her in a collision with appellant's Ford truck on November 7, 1923.

Appellee at the time of her injury was a little girl eleven years old and lived on the south side of Market street just west of Preston street in Louisville, Kentucky. She was returning from school in the early afternoon and had alighted from a West Market street car where it had stopped on the northeast corner of Preston and Market streets. She then crossed from this corner to the southeast corner and was crossing from this last corner to the southwest corner when the collision occurred: According to her testimony and that of three disinterested witnesses, the Ford truck of appellant driven by his agent, Marshall Hardin, a youth of some sixteen years, came rapidly west on Market street from Jackson street, which is the first street east of Preston street, turned sharply without warning, and, at a rate of speed in excess of twenty miles an hour, south on Preston street, and ran into the little girl, who was then between the west rail of the southbound Preston street

car track and the curb. According to the unsupported testimony of Hardin, he was not coming west on Market street but south on Preston street, having turned into Preston street from Main street, the first street north of Market. He says that he was following an automobile just in front of him and that as they crossed over the Market street intersection another automobile coming east on Market street turned south on Preston just in front of the machine ahead of him, which caused this latter machine to stop and in turn caused him to stop about midway of the intersection. He was thus compelled to start his machine again from a standing position and he had not gotten up speed above six miles an hour when the collision occurred with the little girl. He further says that there was a street car standing on Preston street at the southeast corner of Preston and Market discharging or taking on passengers, and that there was an automobile just in front of it; that the little girl came out from behind the automobile and in front of the street car and that he did not see her until she emerged from between them, at which time it was impossible for him, although going only six miles an hour, to stop his car before the little girl, who seemed oblivious of his presence, ran into his left front fender. He says that he stopped within a couple of feet after the collision; but appellee's witnesses testify that he ran some fifty to seventy-five feet before stopping. Hardin also says that after the collision he immediately got out of his machine and discovered that the little girl had gotten up and had walked to the sidewalk and that he accompanied her to her home a few doors away. The appellee's three witnesses, however, testify that no such thing occurred; that the little girl, on acount of her foot being broken in this collision, was unable to walk and that they had carried her home.

Appellant relies for reversal on two alleged errors in the instructions. The first complaint is directed toward instruction No. 1, wherein the duties of Hardin in driving the truck at the time of the accident are set out. Among such duties, the court told the jury that it was incumbent upon Hardin to run "his truck at such a rate of speed not exceeding fifteen miles per hour as you may believe from the evidence was reasonable and proper considering the traffic upon and the use of the intersection at that time." Appellant insists that in effect

the court peremptorily instructed the jury to find for appellee under this instruction if they believed Hardin was driving the truck at a speed in excess of fifteen miles per hour. He insists that section 2739g-51 of the Kentucky Statutes, dealing with the speed of motor vehicles on the highways, only provides that a speed in excess of the limits therein specified shall be *prima facie* evidence of unreasonable and improper driving. The effect to be given to this section of the statutes and its scope were set out in the case of Kappa v. Brewer, 207 Ky. 61, 268 S. W. 831, wherein we said:

> "The statute does not give *carte blanche* to any rate of speed. The rule laid down by it is that the speed shall at all times be reasonable and proper, having regard for the traffic in use of the highway, whatever speed that may be, but that a speed in excess of 30 miles an hour under the conditions named shall throw the burden of showing its reasonableness on the driver of the machine."

Here the appellant did not undertake to show that a speed in excess of 15 miles per hour (in fact under subsection 4 of the Kentucky Statutes, 2739g-51, it should have been 10 miles) was a reasonable or proper speed under the facts and circumstances of this case. The statute having established that a speed in excess of 10 miles an hour was *prima facie* evidence of unreasonable and improper driving, the duty then devolved on appellant to show to the contrary. This he did not do or even undertake to do. His defense was that Hardin was driving only six miles an hour at the time of the accident. There being no proof then even tending to overcome the *prima facie* presumption created by the statute that presumption became conclusive, and the only error the court committed in telling the jury that it was the duty of Hardin not to exceed 15 miles per hour in crossing this intersection was that he placed the limit too high. It should have been ten miles.

The case of Moore v. Hart, 171 Ky. 725, 188 S. W. 861, relied on by appellant is not in conflict with these views, but, on the contrary, is in entire accord with them. In the instruction directed by this court to be given in that case we specifically said that it was the duty of the defendant not to operate his automobile upon the highway at a greater rate of speed than twenty miles

per hour. There is no merit in the first contention of appellant.

The third instruction submitted the appellant's theory of this case in this fashion:

> "If you believe from the evidence that Marshall Hardin was observing all the duties required of him in the first instruction, and if you further believe from the evidence that Dorothy came from behind another automobile and in front of a street car on the east side of Preston street into the path of Hardin's car and so suddenly and so close to his car that he could not by the exercise of the degree of care required in the first instruction and the use of the means at his command stop his car or check its speed in time to avoid collision with her, then you should find for the defendant."

It will be observed that the court predicated the appellant's exoneration from liability if Dorothy suddenly appeared in the pathway of the Ford and so close to it that Hardin in the exercise of ordinary care and by the use of the means at his command was unable to avoid the collision, on the necessity of appellant establishing that Hardin was then observing the duties which the court, by its first instruction, said were incumbent upon him in the management and operation of the machine. Such an instruction has been many times condemned by this court. In the late case of Louisville Railway Co. v. De Marsh, 203 Ky. 231, 262 S. W. 13, the correctness of the following instruction, intended to cover "a sudden appearance," defense was under inquiry:

> "Or if the jury shall believe from the evidence that the plaintiff brought his automobile upon the track of the defendant and in front of the street car so suddenly and so close to the car that the motorman in charge thereof, and while running at a reasonable rate of speed, could not, by the exercise of ordinary care on his part, and the use of the means at his command, slacken the speed of his car or bring the car to a stop in time to prevent it from colliding with the automobile of the plaintiff, and the plaintiff or his automobile was thereby injured, then in either of said events the law is for the defendant, and you should so find."

In condemning this instruction, we said:

"It will thus be seen that the defendant was exonerated from liability under the excerpt from the instruction, if plaintiff brought his automobile in front of the street car so suddenly and so close to it that the motorman in charge thereof could not, by the exercise of ordinary care on his part and the use of the means at hand, slacken the speed of the car, or bring it to a stop in time to prevent the collision, but to entitle it to the exoneration the sudden turning of the automobile in front of the car must have been done, under the instruction, while it was 'running at a reasonable rate of speed.' There could be no exoneration under the instruction if plaintiff suddenly turned in front of the car and the collision could not possibly have been prevented, regardless of its rate of speed. Illustrating our meaning: If a street car had been traveling at 25 miles per hour, an acknowledged excessive speed, and plaintiff had turned his car so suddenly in front of it that it could not have been stopped in time to prevent the injury had it been traveling at a speed of five miles per hour, a reasonable rate of speed, then the excessive speed would not be the proximate cause of the collision. The instruction given by the court took no cognizance of the supposed conditions for which there was sustaining testimony, and it thereby authorized a recovery for excessive speed, when under defendant's theory such negligence would in no event have been the proximate cause of the collision."

In this same case, we approved the earlier case of Louisville Railway Co. v. Gaar, 112 S. W. 1130, wherein the follownig instruction covering the "sudden appearance defense" was directed to be given:

"If the jury believe from the evidence that the plaintiff went out in the street so close to the car that, if the car was running at a reasonable rate of speed as defined in No. 1, the motorman could not by the exercise of ordinary care have perceived his danger, and stopped the car so as to avoid injury to him, the jury should find for the defendant."

However, appellee by supplemental brief insists that the identical instruction given by the court in this case

was approved in the case of American Dye Works v. Baker, 210 Ky. 508, 276 S. W. 133. It is true that this identical instruction was given in the Baker case, and that it was complained of as error, and it is also true that this court did not reverse the lower court on account of this alleged error. But a reading of the opinion in that case will show that this court did not give its unqualified approval to the form of the instruction in question. In the opinion we said:

> "While the verbiage of the instruction given by the court is questionable, the substance, under the facts of this case, was not error, and on the whole case the substantial rights of the defendants were not prejudiced. . . . If the instructions had been worded in the approved form, it could in no wise have affected the result."

In this Baker case there are cited several former opinions of this court bearing on the form of the instruction to be given in cases of this character. The first of these is Netter's Admr. v. Louisville Ry. Co., 134 Ky. 678, 121 S. W. 636. The reasoning of the court in that case is in full accord with principles announced in the De Marsh case. The court there said:

> "If the car was running at such a rate of speed that the motorman could not by the exercise of ordinary care on his part have prevented the injury, even though he had discovered the peril of the child in time to have done so, if the car had been running at a reasonable speed, then the fact that Irene Netter 'suddenly ran in front of the car and so close to the car that the motorman in charge of the car could not by the exercise of ordinary care have stopped the car and prevented the injury' would not relieve the company from liability."

In Louisville Railway Co. v. Vessel's Admx., 159 Ky. 664, 167 S. W. 924, the only question the court had before it was whether or not the motorman of the street car was bound in the exercise of ordinary care to have his car under reasonable control before he saw or by the exercise of ordinary care could have discovered decedent's peril, and this court held that there was such a duty upon the motorman. The question whether

or not the unreasonable rate of speed was the proximate cause of the injury was not involved.

In Louisville Railway Co. v. Buckner's Admr., 113 S. W. 90, the following instruction was directed to be given:

> "But although the jury may believe from the evidence that the decedent was struck by the lumber wagon, or by the lumber on the wagon, and thrown upon the track in front of the car, nevertheless, if they further believe from the evidence that the defendant's motorman in charge of the car could, by the exercise of ordinary care, have prevented it from coming in collision with the decedent but for the negligence, if any, of the said motorman in running said car, at the time the decedent was knocked on the track by the wagon, at a high and dangerous rate of speed, if he did so run it, they should find for the plaintiff."

This instruction is in full harmony with the doctrine of the De Marsh case.

In Goldstein's Admr. v. Louisville Railway Co., 115 S. W. 194, the court indicated that if there had been any evidence that the street car was running at an excessive or unreasonable rate of speed at the time of the collision the instruction on the "sudden appearance defense" should have been modified and the modification directed brings this case in line with the De Marsh case.

We have already commented on Louisville Railway Co. v. Gaar, *supra*.

In Lexington Railway Co. v. Van Laden's Admr., 107 S. W. 740, the instruction directed to be given on the second trial was as follows:

> "If the jury believe from the evidence that the child ran out in the street so close to the car that, if the car was running at a reasonable rate of speed, the motorman could not, by the exercise of ordinary care, have perceived its danger and stopped the car so as to avoid injury to it, the jury should find for the defendant."

This instruction is almost identical with that directed to be given in Louisville Railway Co. v. Gaar, *supra*, cited and relied on in the De Marsh case.

In Hymarsh's Admr. v. Paducah Traction Co., 150 Ky. 109, 150 S. W. 9, instruction No. 2 read as follows:

"If you shall believe from the evidence in this case that plaintiff's decedent at the time and place complained of by plaintiff suddenly or unexpectedly run on defendant's track in front of its moving car and by reason of which and as the sole cause thereof, and not on account of any negligence on the part of the defendant's motorman in charge of said car, as defined to you by instruction No. 1 herein, said decedent was run over and killed by said car, then the law is for the defendant and you will so find."

It is plain that by this instruction the court required that the negligence, if any, on the part of the defendant to be the proximate cause of the injury in order to avoid the "sudden appearance defense."

In Louisville Railway Co. v. Sheehan's Admx., 146 Ky. 168, 142 S. W. 221, no complaint was made of the instructions and this case supports the contention of neither appellant nor appellee.

See also Hummer's Extrx. v. L. & N. R. Co., 128 Ky. 486, 108 S. W. 885.

From this examination of the authorities cited in the Baker case it appears that they all support the rule of the De Marsh case. Since the Baker case was decided, this court has had before it the case of Knapp v. Gibbs, 211 Ky. 278, 277 S. W. 259, in which the defense presented was somewhat similar to the "sudden appearance defense" in the Baker case.

In the Knapp case, two automobiles were being driven, one behind the other. The rear car ran into the back of the front car which had suddenly stopped. The defense was that the front car had stopped so suddenly as to preclude the rear car from avoiding the collision. In commenting on the proper instruction to be given under such state of case this court said:

"To be entitled to this defense defendant must have had his car under reasonable control and have been operating it at a reasonable rate of speed at the time he discovered or in the exercise of ordinary care could have discovered plaintiff's peril, and have thereafter exercised ordinary care with the means at his command to avoid a collision; or it should appear that the injury could not have been avoided

by the exercise of ordinary care with the means at his command after he discovered plaintiff's peril or should have discovered it in the exercise of ordinary care, if his car had been under reasonable control and running at a reasonable rate of speed.''

This but re-announces the principle of the De Marsh case. The De Marsh case, then, presenting the rule applicable to a ''sudden appearance defense'' in cases like the one before us, it is obvious that the instruction complained of in the case before us was erroneous and prejudicial. The jury may have believed that the appellee did suddenly appear in the pathway of appellant's Ford but that it was then going at such an excessive rate of speed as to preclude appellant, under the law as given by the court, from relying on the ''sudden appearance defense'' although the collision would have been unavoidable even had the Ford been going at the permissible rate of speed. Such is not the law. As appellant's defense was practically pitched on the ''sudden appearance'' theory, it is plain that this error in the instruction was highly prejudicial. For this reason, the judgment of the lower court must be reversed, with instructions to grant appellant a new trial herein.

Whole court sitting.