## Gretton v. Duncan.

(Decided April 28, 1931.)

J. B. SNYDER and H. F. WHITE for appellant.

J. L. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Suing by her father and next friend, Irene Duncan an infant, brought this action against W. C. Gretton to recover for personal injuries. The jury fixed her damages at $2,000, and the defendant appeals.

The accident happened on the public highway between Harlan and Pineville, at about 4 o'clock on the afternoon of May 20, 1929. The Duncan family live on the right side of the road going toward Harlan. Irene Duncan, who was then about 6 years of age, had been sent by her mother to the other side of the road to get some meal. Returning she had the pan in her hand, and, after walking across a little platform or log to the left of the highway she started across the highway, and was struck by Gretton's car, who was en route to Harlan. The accident happened a few yards from the city limits of Harlan. On one side were 13 houses, and on the other side 10 houses.

According to the girl's father, the highway is about 16 feet wide, and it was 5 feet distant from where Irene came off the platform. He measured the distance between the place where the car began to skid and the place where it had stopped, and it was 21 feet. The road was straight, and the garage on the side of the road was about 30 or 40 feet back toward the foot of the hill from where the car skidded. Irene stayed in the hospital for 38 days. Her leg was broken, and her face injured and

permanently scarred. She limped all the time and complained of her leg aching and hurting. After leaving the hospital, she was confined to her bed and room for two or three months. It was drizzling rain that day. Nevella Duncan, Irene's mother, testified that she sent Irene across the road. She started to the door and heard the glass breaking, and, when she got there, Irene was hit. She noticed where the car skidded, and pointed out the marks to her husband. At the time she testified Irene still complained of her leg and face hurting her, and limped right smart. On cross-examination she stated that when she got to Irene she was lying about middleways of the road. The marks in the road came toward Harlan. They did not run straight, but swerved to the right. It was the right headlight that struck Irene. The woman to whose house she sent Irene lived up the hill above Ben Middleton's garage, and the path was on the Harlan side. Alice Smith, who lived a few feet away from the Duncan residence, testified that, as Irene came down from the woman's house across the foot log, she looked up and down the road. She saw Irene walking across the foot log with the cup in her hand. At that time Mr. Gretton's car was going 30 or 40 miles an hour. Her husband drove a taxi, and she was well acquainted with the speed of cars. The car was mostly on the left-hand side going toward Harlan. She could not say whether the headlight or the bumper hit the child. Irene was in an ordinary walk at the time she was struck. When she saw Irene, Irene was standing holding to the post and was looking. J. D. Smith testified that he was sitting on the porch at his home and saw the car hit the little girl. He thought the child was hit on the other side of the road. He had a little garage on the opposite side of the road. He did not know how fast the car was running. It stopped on the upper side next to the bank. He did not hear the car blow its horn or anything. At the time of the accident he did not see any other car on the road. At the place of the accident the road was straight for quite a distance both ways. According to W. G. Ferguson, a city letter carrier, he was riding down the highway with Fred Blair. He saw the accident about 300 yards down the road. He saw the child when she was hit, and she appeared to be about in the middle of the road. Just before the accident the car appeared to swerve and turn toward the river. When he reached the place of the accident, the child was 10 or 12 feet beyond

the front of Gretton's car, and the car was pretty close to the edge of the pavement. Dr. W. P. Cawood testified that Irene had a fractured thigh, and some cuts about her face. They set the fracture and put her in a cast. Her right leg was about a quarter of an inch shorter than the left. She may have some permanent injury, and he thought the scars on her face would always be there. In his opinion they got a good result from the operation. He also thought Irene suffered.

On the other hand, Gretton testified that he was driving a Cheverolet coupe on the right-hand side of the road, and was running from 20 to 25 miles an hour. The child came suddenly from the left-hand side of the road and from the upper side of the garage, which was between him and the child. It occurred to him that she made an effort to get across the road hurriedly. He was 10 or 15 feet, maybe 20 feet, from the child when he saw her coming in the pathway of his car. He put on the brakes which were in good order, hit the horn button, and swerved to the right to avoid striking her. The car skidded from 15 to 25 feet. The left-hand side of the car struck her, breaking the left headlight. After striking the child, the car did not go over 5 or 6 feet. Just before the accident there was a car coming in the other direction about 100 yards away. The child appeared to be looking up the road toward Harlan when he struck her. After the accident he took the child to the hospital and stayed until her injuries were treated. Fred Blair, who accompanied Mr. Ferguson, the mail carrier, testified that they were going toward Loyal. When he saw Gretton's car they were between 50 and 75 feet from the place where the little girl was struck. Gretton's car was on the right-hand side of the road coming toward Harlan. After the accident the child was lying 3 or 4 feet in front of the car, and both the child and car were on the concrete on the right-hand side. Dr. E. M. Howard testified that when they discharged Irene her bones had united fairly well, but were not strong. He examined her the day before he testified. She had a pretty good motion of her joints, and there was a firm union of the bone. In his opinion she had gotten good results. E. E. Jenkins, manager of the Kelly Motor Company, who saw the car after the accident, testified that the left headlight glass was broken. H. F. White testified that on May 25, 1929, he had a talk with the witness Alice Smith, who stated

that she did not see the little girl until after she was on the concrete, and did not know where she came from. She also stated that the car was not going more than a moderate rate of speed for that section. He thought Mrs. Duncan was with him, and the court admitted this evidence for the purpose of contradicting Alice Smith. In rebuttal Mrs. Duncan denied that she was present.

We find no merit in the contention that the petition as amended did not state a cause of action. In the original petition negligence was pleaded in general terms. In the third amended petition plaintiff relied on rapid speed, failure to warn, and the negligent operation of the machine. Doubtless the use of the word "rapid" in connection with the speed is subject to criticism, but there can be no doubt that the allegations respecting the failure to warn and the negligent operation of the car was sufficient. On the return of the case the petition may be amended.

Appellant insists that he was entitled to a peremptory not only because no negligence was shown, but because the case is one where the sudden appearance doctrine is applicable as a matter of law. There is a dispute in the evidence as to how far the child was above the garage, and as to whether her presence was concealed by the garage. While appellant claims that the child appeared to come suddenly in the pathway of his car, there was evidence that she came across the log or platform in clear view of appellant, and walked at an ordinary gait. The accident happened outside of the city limits, and at a place where both sides of the highway were compactly built up. At that point the highway was used by a large number of cars and pedestrians and there can be no doubt that appellant owed persons on or about to come on the highway a lookout duty. Though it be true that the place was not one where appellant was under the duty to sound his horn for the benefit of the public in general, it was his duty if he saw plaintiff, or by the exercise of ordinary care could have seen her, in the act of approaching and crossing the highway to give her warning of his approach, and there was evidence that no warning was given. Though appellant claims that he was going 20 or 25 miles an hour at the time of the accident, there was evidence that he was going at the rate of from 30 to 40 miles. In view of the conflict of the evidence, we cannot say as a matter of law that he was running at a reasonable rate of speed, or

that he kept a proper lookout, or that he exercised ordinary care to avoid injuring the child, or that he was absolved from liability because of her sudden appearance on the highway. On the contrary we are constrained to the view that all these questions were for the jury.

The further point is made that no instruction authorizing a recovery for permanent impairment of the power to earn money should have been given because no impairment was alleged or proved. While in an action for personal injuries evidence of earning power is always admissible, neither allegation nor proof of specific pecuniary loss is indispensible to a recovery. Permanent impairment of earning power is merely the test to be applied by the jury in determining the compensation to be awarded for permanent injury, and, where permanent injury is alleged and shown, permanent impairment of power to earn money follows as a matter of course. To what extent is a question for the jury to be determined by the application of their common knowledge and experience to the facts and circumstances of the case. Cumberland Telephone & Telegraph Co. v. Overfield, 127 Ky. 548, 106 S. W. 242, 32 Ky. Law Rep. 421. However, the instruction on the measure of damages is defective for another reason. By the instruction the jury was authorized to allow plaintiff such a sum in damages as would reasonably compensate her for her past and future pain and suffering, and "for the permanent injury, if any, she sustained as the result of the said injury, not to exceed the sum of $25,000.00, the amount claimed in the petition." It is apparent that, aside from the elements of pain and suffering, the instruction furnishes the jury no guide for determining the amount of damages, and is therefore erroneous. Lexington Railway Co. v. Britton, 130 Ky. 676, 114 S. W. 295; City of Louisville v. Koshewa, 161 Ky. 359, 170 S. W. 964; Weil v. Hagan, 161 Ky. 295, 170 S. W. 618; Fenton Dry Cleaning & Dyeing Co. v. Hamilton, 226 Ky. 580, 11 S. W. (2d) 409. In lieu of the words "and for the permanent injury," the court should have inserted the words "and for the permanent impairment of her power to earn money."

The instruction presenting the sudden appearance doctrine is as follows:

"If you believe from the evidence that the defendant, W. C. Gretton, was exercising all of the duties enumerated and set out in the first instruc-

tion herein, and if you further believe from the evidence that Irene Duncan came into the path of defendant's car so suddenly, and so close in front of his car that he could not by the exercise of ordinary care, as defined in instruction No. 3 as set out herein, and the use of his means at his command have stopped his car, or have avoided striking her, then you should find for the defendant.''

In the recent case of Hornek Brothers v. Strubel, 212 Ky. 631, 279 S. W. 1087, we had occasion to review all the authorities on the question, and there held that it was error to limit the sudden appearance defense to a case where the defendant was observing the duties prescribed by the court as to speed incumbent on him in the management and operation of his machine, and approved the form of instruction given in Lexington Railway Co. v. Vanladen's Adm'r, 107 S. W. 740, 32 Ky. Law Rep. 1047, and in Louisville Railway Co. v. Gaar (Ky.) 112 S. W. 1130, which in substance is to the effect that, if the jury believe from the evidence the plaintiff appeared so suddenly in front of defendant's car that, if he had been running at a reasonable rate of speed, he could not, in the exercise of ordinary care and with the means at his command, have prevented the collision, the finding should be for the defendant.

The statute makes it the duty of the person operating an automobile to sound his horn or other device whenever necessary as a warning of the approach of such vehicle to pedestrians or other vehicles. Ordinarily the question of necessity is for the jury, and where that is the case the instruction on warning should incorporate the idea "when necessary." Caines & Smith v. Wheeler, 207 Ky. 237, 268 S. W. 1098. On another trial these words will be inserted in instruction No. 1. That instruction is further attacked on the ground that it told the jury that it was the duty of the defendant to travel on the right side of the highway whenever possible, whereas the statute (section 2739g-35) reads: "And shall travel upon the right side of such highway whenever possible, and unless the left side of such highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty feet ahead," and the evidence shows that the only machine approaching was that driven by the mail carrier, and this was 300 feet ahead. It must not be overlooked that

the evidence of Fred Blair, who accompanied the mail carrier, was to the effect that they were between 50 and 75 feet from the place where the little girl was struck. That being true, it is fairly inferable from his evidence that, as the two cars approached, they were nearer than 150 feet apart. In the circumstances the question was for the jury, and the duty should not have been assumed as a matter of law. In submitting this question on another trial the court, after the words, "and to drive on the right side of such highway when possible for him to do so," will add the words, "and unless the left side of such highway is clear of all other traffic or obstructions and presents a clear vision of at least 150 feet ahead." After these words the court will also add the following: "And to use ordinary care to avoid injuring plaintiff," as that duty was omitted from the instruction.

Judgment reversed, and cause remanded for a new trial, consistent with this opinion.