## Jackson's Administrator v. Rose.

(Decided June 19, 1931.)

W. T. DAVIS for appellant.

R. L. POPE and J. H. TAYLOR for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

On the 4th day of May, 1929, while attempting to cross the Pineville-Harlan highway at or near Varilla in Bell county, Hugh Jackson was struck by an automobile driven by Dr. Joseph N. Rose and received injuries resulting in his death the following day. This action was instituted in the Bell circuit court by Larkin Jackson, administrator of the decedent, seeking to recover for his death. From a judgment for defendant, plaintiff has appealed.

The only questions raised and argued in brief of counsel for appellant relate to the correctness of the instructions given the jury and a disposition of these questions necessitate a resume of the evidence.

From the undisputed evidence, it appears that the highway is paved with concrete, the paved portion being about 16 feet in width with earth shoulders on either side about 5 feet in width. A short time before the accident occurred, decedent and his son, Larkin Jackson, were walking along on the shoulder to the right of the paving in the direction in which they were going.

Dr. Rose was traveling in the same direction in a Ford automobile and discovered the Jacksons when within about 1,050 feet of them. He testified that there was an unbroken view for the entire distance between these two points, and this is also testified to by witnesses for appellant, except that there is a slight discrepancy as to the distance of the open and unobstructed view.

Witnesses for appellant indicated that the distance was approximately 950 feet.

At the time the accident occurred, appellant was in the act of crossing from the right to the left hand side of the highway, taking a diagonal course in the same general direction in which all the parties were traveling, and had gone about two-thirds of the distance across the pavement when the automobile struck him.

As to the facts in dispute, Larkin Jackson testified in substance that before starting across the road, decedent looked to the rear and that no automobile was in sight. Shortly thereafter he also started to cross the highway and had stepped upon the paving when he looked back and saw appellee's automobile wthin 100 feet of his father, bearing to the left on the paving and running at a very rapid rate. He estimated the speed to be not less than 50 miles per hour. He testified that he called to decedent to warn him of the approach of the automobile, but before decedent could turn his head to look in the direction from which it was approaching, he was struck by it. He stated that he did not hear the horn sound at any time, and other witnesses who were near, but who did not actually witness the accident, testified to the same effect.

Dr. Rose testified that he was driving to the right of the road at a rate of about 35 miles per hour until he approached within about 125 yards of the Jacksons, thereupon Hugh Jackson stepped upon the paving. He immediately sounded the horn, and decedent motioned with his hand and his head to come ahead and stepped back toward the right-hand side of the concrete; that he then slowed the automobile down to approximately 30 miles per hour and pulled to the left preparatory to passing Mr. Jackson, but that when the automobile approached to within approximately 30 feet of him, he suddenly ran diagonally across the road; that he immediately applied his brakes, but in less than two-thirds of a second the car struck Jackson. He estimated that the car was going some 15 to 20 miles per hour when it struck him.

The court gave instructions A, B, C, and A-1, and 1, 2, 3, and 4. The last four were given upon motion of defendant, the others by the court upon its own motion. None were offered by the plaintiff.

Instruction A is criticized by counsel for appellant: First, because it did not make it the duty of appellee to

use reasonable precaution and to operate the automobile in a careful manner. Second, because it did not impose upon appellee the duty of sounding his horn instead of leaving that question to be determined by the jury. If these were the only objections to the instructions, we are not prepared to say that this court would be justified in holding this instruction to be erroneous, as it appears to closely follow the allegations of the petition. But, upon another trial, the court in a similar instruction will, in addition to the duties therein enumerated, include the duty of exercising ordinary care to avoid striking plaintiff's decedent. Where there is a conflict of evidence as to the necessity of giving warnnig of the approach of an automobile, it is proper to submit that question to the jury and the court did not err in that particular in this instance. Collett's Guardian v. Standard Oil Co., 186 Ky. 142, 216 S. W. 356.

Following the reference to instruction A-1 in the instruction under consideration, the jury should be instructed in effect that unless they so believe, or if they believe as set out in other instructions under which a finding for defendant would be authorized (designating same by number), the finding should be for the defendant.

The next objection is directed at instruction C because it made it the duty of plaintiff's decedent in attempting to cross the highway to keep a lookout for automobiles. The law imposes upon the pedestrian using the highways the duty of exercising ordinary care for his own safety and imposes upon the driver of an automobile the duty of exercising ordinary care to avoid injuring others. "Ordinary care" is generally understood and recognized as meaning, when applied to each, such care as is usually exercised by ordinarily prudent persons under similar circumstances and conditions. In negligence cases there is a rule of law that the care to be exercised must be commensurate with the power to inflict injury. Hence it follows that ordinary care as applied to a driver of an automobile is of a higher degree than ordinary care when applied to a pedestrian. Weidner v. Otter, 171 Ky. 167, 188 S. W. 335, 339.

The automobile has come into such universal use that its presence upon the main highways may be anticipated by all persons, and the exercise of ordinary care by a pedestrian includes within its scope and meaning the use of the natural senses to discover its approach

and to avoid being struck when crossing or walking along highways.

In the case of Weidner v. Otter, supra, this court with reference to the relative duties of the pedestrian and the driver as they should be embodied in instructions said:

"But these special duties, although they are proper subjects for argument by counsel, and proper subjects of inquiry by the jury, need not be pointed out as evidence of care in an instruction.

"When, however, a jury comes to consider the care that the operator of an automobile should exercise, a general definition of what constitutes ordinary care is not sufficient to meet the conditions arising in the use of these powerful vehicles. The fact that law, as well as custom, based on ordinary experience, and for the protection and safety of other persons, requires that they shall be operated at a reasonable speed, that the driver shall keep a lookout, and that warning of approach shall be given, itself demonstrates the propriety of pointing out in an instruction the duty the automobilist is under, so that the jury may have their attention specifically directed to the standard of care that must be exercised, without being left to speculate as to what constitutes ordinary care."

While, as already indicated, it was the duty of the plaintiff's decedent in crossing the highway to use ordinary care to learn of the approach of automobiles and to avoid being struck by them and in so doing to make use of his senses of sight and hearing, yet this court has never committed itself to the proposition that these specific elements of ordinary care upon the part of the pedestrian should be embodied in an instruction defining the degree of care he should exercise for his own safety.

In the light of the authorities examined, we conclude that the lookout duty should have been omitted from the instruction under consideration and the jury told in substance that it was the duty of appellant's decedent to use ordinary care to learn of the approach of defendant's car and to keep out of its way. Otherwise, the instruction should be in effect the same as that given.

The next and last objection made by appellant's counsel is leveled at instruction number 1. Instructions in many respects similar to the one criticized have come

under the condemnation of this court in a number of cases. In the recent case of Gretton v. Duncan, 238 Ky. 554, 38 S. W. (2d) 448, 451, decided April 28, 1931, the opinion indicates in clear and specific terms the character of instructions that should be given in lieu of the one under consideration. In the course of that opinion, it is said:

"In the recent case of Hornek Brothers v. Strubel, 212 Ky. 631, 279 S. W. 1087, we had occasion to review all the authorities on the question, and there held that it was error to limit the sudden appearance defense to a case where the defendant was observing the duties prescribed by the court as to speed incumbent on him in the management and operation of his machine, and approved the form of instruction given in Lexington Railway Co. v. Vanladen's Adm'r, 107 S. W. 740, 32 Ky. Law Rep. 1047, and in Louisville Railway Co. v. Gaar (Ky.), 112 S. W. 1130, which in substance is to the effect that, if the jury believe from the evidence the plaintiff appeared so suddenly in front of defendant's car that, if he had been running at a reasonable rate of speed, he could not, in the exercise of ordinary care and with the means at his command, have prevented the collision, the finding should be for the defendant."

We note that there is a duplication of instructon on contributory negligence and the measure of damage. While no objection is made to the instructions in this particular, it tends to confusion and should not occur on another trial.

For the reasons indicated, the judgment is reversed, and the cause remanded to the lower court for new trial and for further proceedings consistent with this opinion.