# Trainor's Administrator v. Keller.

(Decided Jan. 29, 1935.)

C. C. GRASSHAM and ROY G. GARRISON for appellant.

W. A. BERRY and ADRIAN TERRELL for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellant's intestate, Charles H. Trainor, an elderly man, either walked into or was struck by the right front fender of an automobile being driven by the appellee, Mrs. Genevieve Keller, and was knocked down. He suffered the fracture of his skull which resulted in his death. In this suit for damages by his administrator, the verdict was for the defendant.

The accident happened in Paducah on the south side of Broadway, just eas$^t$ of Eleventh street. Refer-

ence is also made to a railroad crossing somewhere near by. All of the evidence presented by the plaintiff is indefinite, and because the witnesses referred to local conditions, which are not familiar to us, and also to a map before them, and not before us, the exact situation is difficult to comprehend from the record. There were two automobiles parked parallel with the sidewalk. It appears that the closest was perhaps 30 feet from the east edge of Eleventh street. The defendant's automobile was traveling east on the south side of Broadway. One witness testified that Trainor waited at the corner intending to cross and board a bus on the opposite corner, and that he stopped within 3 feet of the curb, thereby placing him at the regular crossing for pedestrians. He says that he was standing in front of the parked automobiles, and as Mrs. Keller was passing them she pulled into the curb a little and struck him. As we understand, however, the witness was where he could hardly have seen what did happen. Other witnesses put Trainor in front or behind one or both of the parked cars, and say that he was struck as he started to cross the street. All agree that Mrs. Keller was driving very slowly and stopped almost instantly. She testified:

"After I passed the crossing I continued to drive slowly and went four or five doors down Broadway and there was a man standing between two cars. He was standing right at the edge of the cars,— of the car that was to the east. He was standing there motionless, just as still as I ever saw anybody stand, waiting for cars to pass by. I noticed him until I was almost up to him, because he was standing at the edge of the curb, and I turned a little to the left in order that I might continue to travel on down Broadway more in the center of the street. Just then my niece, Genevieve Quinlan, turned around like this (indicating to the jury) and said, 'Oh, you have struck him.'"

Her niece, who was on the right-hand side and consequently nearer to the deceased, testified that at the moment she had been facing the other way and just as she turned her head she caught a glimpse of an object and at that instant Mr. Trainor came into the car or in front of it. She had not seen him before.

Instruction No. 1 defined the several duties of the

defendant under the circumstances, but did not state that it was her duty to sound the horn if necessary as a warning of her approach. Section 2739g-28, Statutes. The plaintiff offered an instruction embodying that duty, which was refused. Sometimes the circumstances of a case were such that the court should say as a matter of law that the horn should have been sounded; sometimes that it was not necessary. Often the evidence is so equivocal as to require submission of the question to the jury. Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753. There was evidence here tending to show that the deceased was at or very close to the regular street crossing and in the act of passing. Mrs. Keller testified she was about 10 feet from Mr. Trainor when she first saw him. Her evidence is not clear whether he was then at the curb, that is, at the sidewalk, which would have placed him at least 8 or 10 feet from the closest line of traffic, or at the north side of and between the parked cars, and hence only a step or two out of line. That he was oblivious of the approaching automobile is obvious. The defendant admits that no horn or other signal was sounded. If he was at the sidewalk when she first saw him, he must at the moment have started walking toward the lane of traffic. The jury may have thought that under such conditions she saw or should have seen him coming out, and that the sounding of the horn was necessary, and had it been blown he would have stopped and escaped injury. If he was at the outer edge of the parked cars, the jury may have thought that the defendant should have realized that he might step out in front of her and ought to have given him warning.

While a driver of an automobile is not required to anticipate that a pedestrian seen in a place of safety will leave it and get in the danger zone until some demonstration or movement on his part reasonably indicates that fact (Peak v. Arnett, 233 Ky. 756, 26 S. W. [2d] 1035), yet cases do arise where it becomes the driver's duty to give warning to one on the highway or in close proximity to it who is apparently oblivious of the approach of the car, or one whom the driver, in the exercise of ordinary care, may reasonably anticipate will come into his way. Best's Adm'r v. Adams, 234 Ky. 702, 28 S. W. (2d) 484. We are of the opinion that under the conditions disclosed in this record the jury should have been permitted to say whether the

defendant was negligent in not complying with the statutory duty of sounding the horn when necessary as a warning of her approach. Wener v. Pope, 209 Ky. 553, 273 S. W. 92; Hart Dry Cleaning Co. v. Grizzel, 218 Ky. 111, 290 S. W. 1057; Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497; Jefferson's Adm'x v. Baker, 232 Ky. 98, 22 S. W. (2d) 448; Best's Adm'r v. Adams, supra.

Instruction No. 2 defined the duties of the decedent, the violation of which constituted contributory negligence. It stated that duty to be:

> "To keep a lookout ahead for vehicles using the street at the time and place mentioned in the evidence, and to exercise ordinary care generally to prevent striking or being struck by vehicles using the street at said time and place."

The duty of a pedestrian is only to exercise the care generally exercised by a person of ordinary prudence under the circumstances; that is, ordinary care. The jury is the judge of what that was under the circumstances. Wilder v. Cadle, supra. If the conditions were such that the jury believed that before starting across the deceased, in the exercise of reasonable care for his safety, should have looked up or down the street, then that duty would be embraced in the term "ordinary care."

In Weidner v. Otter, 171 Ky. 167, 188 S. W. 335, we held it is not required of a pedestrian as a matter of law that he should look and listen for the approach of automobiles before attempting to cross a street; that his whole duty is defined by the term "ordinary care." The jury may or may not believe that the exercise of that degree of care required that the pedestrian for his own safety should have looked or listened under the circumstances. This conclusion was iterated in Jackson's Adm'r v. Rose, 239 Ky. 754, 40 S. W. (2d) 343, where a pedestrian was killed while crossing a highway in the country. In both opinions instructions defining the duty of the injured man to keep a lookout for automobiles were condemned. Upon another trial the instruction should be that it was the duty of the decedent to exercise ordinary care to learn of the approach of the defendant's automobile and to keep out of its way.

The term "ordinary care" was defined in the usual manner by instruction No. 4, and this was stated to be "as applied to both the defendant and the decedent Trainor." Vigorous objection is made to this instruction as having placed upon both parties the same degree of care, whereas, it is argued, there is a heavier duty and responsibility resting upon the driver of an automobile than upon a pedestrian. The difference arises from the application of the term and not from the duty itself. "Ordinary care" is a relative term. The care, caution, and diligence required of every one is that commensurate with the danger—with the capacity to injure or the possibility or being injured. The duty or care is always measured by the circumstances; that is, both the condition and the activity in which one is situated and engaged at the time, for the greater the hazard the greater the care required; but always it is called ordinary care. McWilliams v. Kentucky Heating Company, 166 Ky. 26, 179 S. W. 24, L. R. A. 1916A, 1224; Weidner v. Otter, supra. Ordinary care for the driver of an automobile is one thing; it involves circumspection and action different from that required of a pedestrian. Ordinary care for a pedestrian is another thing; it involves circumspection and action different from that required of the automobilist. Negligence is the absence of care in the performance of an act, which may be one of omission or of commission. What the proper act or reasonable conduct should be depends upon the conditions and the relationship of the parties. Negligence is the breach of a duty which one owes to another by reason of the relationship existing or the circumstances presented. Stober v. Embry, 243 Ky. 117, 47 S. W. (2d) 921. Hence the definition and application of the term as given by the court is correct.

Because of the errors in the other instructions, the judgment is reversed.