## Wheeler's Adm'r v. Sullivan's Adm'r.

(Decided Oct. 22, 1935.)

BEN V. SMITH & SON for appellant.

H. C. KENNEDY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

A judgment for $2,750 was recovered by the administrator of the estate of Norine Sullivan against Dr. G. B. Wheeler for her death, caused by being struck by his automobile on August 10, 1933. The defendant having subsequently died, the appeal is prosecuted by his administrator.

The decedent was not quite 12 years old. She and other children, returning from a schoolhouse where they had gone to be vaccinated, were given a ride in the automobile of Clay West. The automobile was stripped of its rear seat, and was what has come to be known as a "skeeter." There were four children riding on the rear facing in the direction opposite to that in which the car was moving. The car was stopped on the right or south side of the road in the village of Bronston. Norine Sullivan and Lonnie Mae Richardson, aged 10, immediately got off and started to cross the road to the post office. At that moment the defendant's automobile came from the west. According to all the witnesses, save only Dr. Wheeler and his companion, he did not sound his horn or otherwise give warning of his approach. All the occupants of the West car say they had not seen or heard the automobile until just

before it struck the child. The defendant had passed some pedestrians about 750 feet back, going at the estimated speed of 60 miles an hour. Other than the defendant's testimony, the evidence is that when he struck the child he was going 35 miles an hour. The road is straight, with a clear and unobstructed view for 500 or more feet. Several of the witnesses say that Lonnie Mae Richardson had crossed the road and was on the porch of the post office when Norine was hit by the automobile when within a step of the north side of the surface of the road, but Lonnie Mae and others, including the defendant and his companion, testified that she got about halfway across and ran back beside the West car while Norine went on. A car belonging to Simpson was parked on the north side, almost if not entirely off the surface, immediately in front of the post office, but not directly across from West's machine.

Leaving out of consideration the diagonal measurement, it is made manifest that there was ample space for clear passage of the defendant's automobile. As stated, Norine was struck when near the north edge of the road's surface, which was the left or wrong side for the defendant to drive upon. She lodged on the bumper or fender and was carried about 90 feet before she dropped off, and then the machine continued a short distance before it was stopped. The child was given aid by Dr. Wheeler, and taken to a hospital, where she died during the afternoon. The fender of the Simpson car was also hit by the defendant's machine.

Dr. Wheeler testified that he had kept 60 or 75 feet behind the West car as they came into Bronston; that it stopped suddenly without signal, and the child got off before it had come to a stop and started to cross the road 50 or 60 feet ahead of him. There are some inconsistencies in his testimony. At different times he stated the child was 30 feet from him when she started to cross the road, and again that she was 10 or 15 feet. When he sounded his horn, the Richardson child ran back, but Norine went ahead and was about the center of the road when he hit her with his left headlight. There were only 9 or 10 feet between the parked cars. He cut his machine to the left to avoid the little Richardson girl, and put on his brakes so that he skidded the four wheels. He testified that he had not been going over 20 or 25 miles an hour, and was going 8 or

10 miles an hour when he struck the child, yet that he ran 30 or 40 feet before he could stop the machine. Lena Bailey, who was with the defendant, corroborated him generally, but stated that, when Dr. Wheeler first saw the children, he "stepped on the gas" and tried to beat them—to pass in front of them, as we understand it.

The answer was in four paragraphs, namely: (1) A general denial; (2) contributory negligence of the deceased; (3) contributory negligence of the parents in permitting the child to walk from the school, a distance of one and one-half miles, along a heavily traveled road; and (4) contributory negligence of West, to whom the parents had intrusted the custody of the child as their agent or representative. Upon motion of the plaintiff, paragraphs 3 and 4 were stricken. It is argued that this was error, since a party may plead as many consistent defenses as he has, and these pleas were of that character. Let it be conceded for the argument that the court should not have stricken these defenses. There is nothing whatever in the record, either as proffered or admitted evidence, tending to sustain them. Hence it must be said that the conceded error was harmless.

Instruction No. 1 defined the duties of the defendant. It contained a clause "and if necessary as a warning of the approach of his automobile to persons or other vehicles upon the highway, or about to enter thereon to sound the horn or other devise." The criticism is that the instruction should have submitted to the jury whether or not under the facts and circumstances proven in the case it was necessarry to sound the horn, since there was no evidence that placed the defendant under a duty to anticipate the sudden appearance of the child in front of his car, or that, if he had sounded his horn continuously, he could have prevented the accident. Aside from the conclusion that the evidence did not warrant the application of the "sudden appearance" rule, we can find no fault with this instruction. It did leave to the jury whether or not under the facts and circumstances it was necessarry to sound the horn [see Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S. W. (2d) 232], as the whole case was obviously submitted upon the facts and circumstances disclosed in the evidence.

Nor can we see error in instruction No. 2, submit-

ting the defense of contributory negligence of the decedent. It does not appear to be abstract. It advised the jury that it was the duty of the deceased at the time and place "to exercise ordinary care as defined in the 5th instruction for her own safety." The fifth instruction correctly defined ordinary care on the part of the child. The only duty of a pedestrian is the common-law duty to exercise ordinary care for his own safety, since the statute does not undertake to define or declare what is required of him. Of course, that degree of care may, in the minds of the jury, have required the pedestrian to learn of the approach of an automobile and to keep out of its way, which specific duties were embodied in the offered instruction, or it may have required even greater or less diligence under the circumstancs. Cumberland Bus Co. v. Helton, 227 Ky. 587, 13 S. W. (2d) 753; Jackson's Adm'r v. Rose, 239 Ky. 754, 40 S. W. (2d) 343; Trout's Adm'r v. Ohio Valley Electric Railway Co., 241 Ky. 144, 43 S. W. (2d) 507; Southeastern Telephone Co. v. Payne, 253 Ky. 245, 69 S. W. (2d) 358; Trainor's Adm'r v. Keller, supra. The instruction is in the form directed to be given in Metts' Adm'r v. Louisville Gas & Electric Co., 222 Ky. 551, 1 S. W. (2d) 985, which involved the death of a child in a street.

The third instruction, which undertook to give the defendant the benefit of the "sudden appearance" rule, was erroneous, as it limited his escape from liability on the ground that the child's appearance before him was so sudden that, by the use of ordinary care, he could not have prevented striking her, only in case the jury should believe that he was observing all of his several duties enumerated in the first instructon and therein iterated. Gretton v. Duncan, 238 Ky. 554, 38 S. W. (2d) 448; National Surety Co. v. Hester's Adm'r, 241 Ky. 623, 44 S. W. (2d) 563. But the giving of the instruction was not prejudicial, for, under the facts, the defendant was not entitled to that defense. Accepting his own testimony, it shows that for some distance he had been traveling close behind the car with the children on it, and had seen both the little Richardson and Sullivan girls get off and start across the road when he was 50 or 60 feet away going 20 or 25 miles an hour. His brakes were in good condition. Several qualified witnesses testified that a car of the type he was driving, on a slightly wet road, could have been stopped within

25 or 30 feet, or, as stated by one witness, from 35 to 40 feet. The entire situation was clearly before the defendant, and, while he may have thought it best to swerve to the wrong side of the road, it would appear that, had he gone no farther than the center instead of trying to go in front of the Sullivan child and going to the extreme left edge of the road, he could have avoided the accident. The application of the sudden appearance rule has been often considered, and we think this conclusion that the instruction should not have been given is consistently supported by our cases. Metts' Adm'r v. Louisville Gas & Electric Co., supra; Ashland Sanitary Milk Co. v. Messersmith's Adm'r, 236 Ky. 91, 32 S. W. (2d) 727. The latter case is especially pertinent, for, under somewhat similar facts involving the death of a small child, the court held that the defendant was not entitled to the benefit of the sudden appearance doctrine.

On the voir dire the panel was asked, "Are any of you employed by, or agent of, any insurance company writing liability insurance on automobiles?" The defendant's motion to discharge the panel and continue the case was overruled. We have repeatedly held it to be misconduct to get before the jury the fact or an intimation that the defendant was protected by indemnity insurance, but, when it was manifest that such disclosure was an inadvertence, or there was no indication of a breach of good faith, the matter has been overlooked or held to be unavailable as a ground for reversal of the judgment. Consolidated Coach Corporation v. Hopkins, 228 Ky. 184, 14 S. W. (2d) 768; Gayheart v. Smith, 240 Ky. 596, 42 S. W. (2d) 877; Ashland Sanitary Milk Co. v. Messersmith's Adm'r, supra. Under some circumstances, it may not be improper to make such interrogation of prospective jurors as will elicit their interest in this character of insurance business. Hedger v. Davis, 236 Ky. 432, 33 S. W. (2d) 310; Ashland Sanitary Milk Co. v. Messersmith's Adm'r, supra. But in a rural community, where the lawyers are usually acquainted with men qualified for jury service, and know who are engaged in the insurance business, it is hard to entertain the view that such a question as was asked here was altogether protective and bona fide. The injection of this matter into the trial is ordinarily prejudicial, for we are not unmindful of the probable effect upon some jurors. W. G. Duncan Coal Co. v. Thompson's Adm'r, 157 Ky. 304, 162 S. W.

820

1139; Netter v. Caldwell, 173 Ky. 200, 190 S. W. 721; Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715; Hoagland v. Dolan, 259 Ky. 1, 81 S. W. (2d) 869. While the interrogation may be condemned, since the evidence of negligence on the part of the defendant in a high degree is so clear and the verdict is relatively small, we hold it to be nonprejudicial in this particular case. We are admonished that a reversal of a judgment must not be granted except on error which prejudices the substantial rights of a party. Civil Code of Practice, secs. 338, 756.

The defendant had been indicted for voluntary manslaughter growing out of this accident. The evidence was concluded one night about 9 o'clock, and adjournment of the court had until the next morning. Dr. Wheeler was then living in Lexington, and as he left the bar the sheriff quietly spoke to him in arresting him. He returned and sat down in one of the jury chairs. Most of the jurors were on the other side of the room getting their hats, but some were close enough to have heard and seen what took place. There was no demonstration, and it is not shown that any of the jury learned what had taken place. The motion to discharge the jury and continue the case on this account was overruled. The circumstances could not have prejudiced the defendant, and this ground for reversal of the judgment must likewise be disallowed.

Judgment affirmed.