**LESLIE–FOUR COAL COMPANY, Appellant,**

v.

**William BROCK, Administrator of the Estate of Susie Brock, Appellee.**

Court of Appeals of Kentucky.

March 3, 1961.

Willis W. Reeves, Maxwell P. Barret, Hazard, for appellant.

A. E. Cornett, Hyden, for appellee.

STEWART, Judge.

This is an appeal from a judgment of $12,822 rendered against Leslie-Four Coal Company (herein referred to as "defendant" and sometimes called "the company") in favor of William Brock, administrator of the estate of Susie Brock, deceased, (herein referred to as "plaintiff".) This is an accident case involving a pedestrian and a truck.

At the close of plaintiff's evidence and at the close of all the evidence defendant moved for a directed verdict, both of which motions were overruled. After the verdict was returned defendant moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial, both of which motions were overruled.

The question raised that is determinative of this appeal is, assuming the operator of the company's truck drove it in a negligent manner, was Susie Brock, who was fatally injured, guilty of contributory negligence as a matter of law?

The accident happened the morning of May 28, 1958, on U. S. Highway 421 in a rural section of Leslie County near the Harlan County line. It was a cloudy day but the pavement, which is 18 feet wide, was dry. The mishap occurred in front of one Matt Belcher's store, situated on the east side of the highway. Susie Brock, then aged 68, alighted from the cab of her son's pickup truck on the west side of the highway. Another son, James Brock, who had ridden in the back or bed of the pickup, also got out and crossed over to the store ahead of his mother. The pickup pulled out, headed south, and Susie Brock began walking across the pavement. Appellant's truck, a 1955 ton-and-a-half Ford, loaded with a drill and motor and driven by Marshall Hibbard, aged 36, was on the occasion approaching from the south, proceeding northwardly. From the evidence, Susie Brock collided with the left side of the truck bed, which was metal and extended past the cab of the truck about six inches. Her point of impact was six or eight feet back from the front bumper.

The operator of the company's truck testified he was traveling at a rate of speed of 35 or 40 miles per hour (the speed limit at the place of the accident is 50 mph); that he saw the pickup but saw no one on the highway until he got up close to the store; that as he drew near it the pickup pulled out and he first observed the person who turned out to be Susie Brock when he was 25 to 40 feet away from her; that all at once somebody, a woman, came across the highway from behind the pickup; that he swerved to the right in an effort to miss her, the wheels on his right side going off the pavement; that she was "darting" across the highway; that she hit the corner of the truck bed and he applied his brakes; that when he finally stopped he was in the middle of the road; and that she "was looking straight across the highway" and was in the middle of the highway when she was struck.

Georgia Burkhart, who gave a deposition in behalf of appellant which was read at the trial, stated she lives on the same side of the highway as the Matt Belcher store, about 250 feet north of it. She said she was looking out a window toward the highway in front of the store, and her view extended toward the south "maybe 300 feet or more above the store." She further testified she saw the pickup move out and at the same moment appellant's truck "was coming down"; that when the trucks passed each other Susie Brock was crossing the highway; and then "the truck hit her * * * it just happened so quick." She also said appellant's truck was "on its right side coming" her way when the accident occurred.

James A. Gay, a trooper of the Kentucky State Police, arrived at the scene of the accident about an hour after its oc-

currence. Called as a witness by appellant, he testified he measured the skid marks made by appellant's truck soon after he reached the site and, in addition, took some pictures of the stretch of highway at the place of the accident. The skid marks made by braking the truck were 87 feet long, according to his statement. Two photographs of the highway, one with the camera turned south and another with it pointed north, show tire tracks of the truck that are plainly visible. These photographs also clearly reveal that appellant's truck swerved so far to the right that one set of the tire tracks appear on the right shoulder of the road for at least 10 feet. The truck's tire tracks do end in the center of the highway but, as trooper Gay stated, this was 87 feet north of the point of collision. This officer said the skid marks began 20 or 25 feet north of where Susie Brock was crossing the highway. He stated that the highway at the scene of the accident was straight and nearly level for a distance of about 500 yards.

James Brock, the son of Susie Brock who got off the pickup and crossed over the highway to the east, testified on direct examination that he was standing in front of the Matt Belcher store when his mother was hit by the truck and killed. He said that as he "turned back and looked for her," she was on the pavement about a foot. He next saw his mother start walking across the highway and, when she was within three feet of the center line, she stopped and then appellant's truck passed between them, obscuring his view of her. He claimed appellant's truck was traveling at 65 or 70 miles per hour and was being driven "over the center line" so as to be partially out of its own right lane. He admitted there was no other traffic on the highway, except his brother's pickup, and that his mother had an unobstructed view in both directions.

On cross-examination James Brock changed the statement he had previously made to the effect that his mother was standing still within three feet of the center line when the truck blocked her off from him. We quote his testimony as modified:

"Q. 31. Before the truck hid her from your view you saw her take one step? A. Yes.

"Q. 32. After that you don't know how many steps she did take before the collision occurred, do you? A. No, sir."

Plaintiff's witness, Tilda Belcher, who was inside the store of her husband, Matt Belcher, stated she heard the pickup stop and she looked out the store window. She testified: "I saw her (Susie Brock) standing at the back end of the (pickup) truck and I saw the (pickup) truck pull out; when I turned away from the window and as I turned away I heard the noise." Of course the "noise" had reference to sounds that ensued from the collision of the truck with Susie Brock.

Appellant, in urging a reversal of the judgment in this case, claims that Susie Brock failed to yield the right of way to its truck and her failure in this regard was a contributing cause of the fatal accident. It is contended she violated the provisions of KRS 189.570 (4) (a) which reads: "Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway."

All the witnesses who testified on the point stated that appellant's truck made contact with Susie Brock within seconds after it had passed the pickup. It appears James Brock jumped from the bed of the pickup and immediately crossed over the highway. In the meantime his mother was getting out of the cab and proceeding toward the rear of that truck. When James Brock turned around and next observed his mother she was standing about a foot upon the highway. He said appellant's truck was at that time 100 feet away and was over the center line when his mother

started across the pavement, advancing at a very rapid rate of speed.

As to the whereabouts of the pickup, he indicated it "was already gone" and was traveling on its side of the highway. His evidence is silent in respect to how far it had proceeded from its parked position before it came alongside the other truck. As all the other eyewitnesses, without exception, testified the pickup in moving out passed appellant's truck as it was "coming down", and that the accident happened an instant thereafter, the statement of James Brock placing the pickup in its right of way while locating appellant's truck at the same time three feet over the center line appears to be refuted by the physical facts all the other witnesses testified to. If these two trucks had met under the conditions he indicated they would undoubtedly have collided with each other, or one would have forced the other off the pavement, before appellant's truck arrived at the place where Susie Brock was injured.

It will be recalled that James Brock, after testifying his mother had stopped within three feet of the center line of the highway, stated on cross-examination that, before appellant's truck obstructed his view of her, he saw her "take one step." He also conceded he did not know to what extent she afterwards advanced forward before the accident transpired because his view of her was hidden. It is obvious he did not see her after the truck came between him and her, and therefore he could not say whether she did or did not keep walking on. This evidence would convey the thought that Susie Brock was not actually stationary out in the highway when she was struck but, on the contrary, that she was definitely moving across it into a dangerous position with reference to the oncoming truck.

Photograph No. 3 taken by trooper Gay shows that Susie Brock collided with appellant's truck on that portion of the bed which projected out six inches, but that the point of contact of her body was near where the hood joined onto the bed. As has been mentioned, Marshall Hillard, appellant's truck driver, testified Susie Brock "darted" across the highway without looking to either side. The portion of this statement to the effect that she was not keeping a lookout was never contradicted. Certainly if she had been looking in the direction from which appellant's truck came she could have seen it. Even if the truck was on her side of the pavement to some extent, if she had been watching for traffic on the highway, she could have avoided contact with it. The fact that she collided with appellant's truck on its side would tend to convince one that she was inattentive while proceeding across the road.

In the case of Jackson's Adm'r v. Rose, 239 Ky. 754, 40 S.W.2d 343, 345, Jackson, the pedestrian, was walking along the right side of the highway and, in the same direction he was traveling, the motorist, Joseph N. Rose, was driving his car. Jackson was struck and killed by the Rose car. In a suit for damages by the personal representative of the decedent's estate a question arose concerning the instructions that should be given at another trial, and this Court said in part: " * * * the jury (should be) told in substance that it was the duty of appellant's decedent (the pedestrian) to use ordinary care to learn of the approach of defendant's car and to keep out of its way."

The opinion in the Rose case also contained this pertinent language: "The automobile has come into such universal use that its presence upon the main highways may be anticipated by all persons, and the exercise of ordinary care by a pedestrian includes within its scope and meaning the use of the natural senses to discover its approach and to avoid being struck when crossing or walking along highways."

It seems to us that Susie Brock failed to yield the right of way under the circumstances to appellant's truck, as she was required to do under KRS 189.570 (4) (a),

and that her failure in this respect was a contributing cause of the accident. It also seems to us that she walked blindly into the *side* of appellant's truck and did so without ascertaining whether it was in her pathway. To sum up, Susie Brock, in our opinion, failed to "use ordinary care to learn of the approach of (appellant's truck) and to keep out of its way." Thus, she was contributorily negligent as a matter of law.

Wherefore, the judgment is reversed with directions that it be set aside and that a new one be entered for defendant.

PALMORE, J., dissents on the ground that, in view of the testimony of James Brock to the effect that immediately prior to the accident his mother had stopped three feet short of the center of the highway and the truck was partially on the wrong side, the question of her contributory negligence was properly for the jury.