DETINUE.          **Prather** *vs* **Naylor's administrator.**

*Case* 79.          ERROR TO THE JESSAMINE CIRCUIT.

*Evidence.    Practice in  the Circuit Court.    Instruction.*
*Mental  capacity to contract.*

*May 5.*    JUDGE MARSHALL delivered the Opinion of the Court.

The case stated.    THIS was an action for detinue for a slave which had been sold by George Naylor, in his lifetime, to the defendant, Prather. The ground on which a recovery was sought was, that at the time of the sale, Naylor was of unsound mind and incapable of making a binding contract.

After the action had been pending for more than a year, and after one new trial had been granted to the defendant, and the jury were sworn at a succeeding term, the defendant moved, on his own affidavit, for a rule upon the attorney's prosecuting the suit, to show by what authority they did so. The affidavit, however, states the dissent of the administrator, or rather the absence of assent on his part, as matter of hearsay only, and as it discloses the fact that he knew of the pendency of the suit, his acquiescence in its prosecution, for the benefit of those who were benficially interested, might well be presumed, and the Court did not err in refusing the rule, especially at that stage of the proceeding.

In a case involving the question of capacity of plaintiff's intestate to contract, it is not wholly irrelevant to prove that the individual, then about eighty years old, desired to marry a woman of about half his age, and not of very good character.—          With regard to the questions, as to the admissibility of evidence, made upon the trial, it is sufficient to remark, that the fact that the decedent, at the advanced age of about eighty years, desired to marry a woman of little more than half his age, and of a bad moral character, cannot be deemed wholly irrelevant upon the question of the soundness or unsoundness of his mind, which might depend upon a variety of facts of more or less importance in themselves. And if it be conceded that the record from the Garrard Circuit Court, which showed that the decedent had been found to be of unsound mind, by an inquisition ordered by that Court, but which was af-

terwards quashed, for irregularity, was not properly admissible, with a view to proving the fact of unsoundness of mind. It was certainly competent to prove that such an inquisition had been held with such a result, and this fact, in connection with the direct evidence going to show that the defendant knew of the whole proceeding before his purchase, was relevant, and might be important to the plaintiff's case; as, with a knowledge of this proceeding, the defendant cannot be regarded as having dealt innocently with the decedent, and is justly liable to the conseqences of dealing with a man incapable of making a contract, if in fact he was of unsound mind at the time.

As to the plaintiff's being permitted to introduce one or more witnesses, who testified upon the main question of unsoundness of mind, after the plaintiff had, in the first instance, declared he was through his evidence, and the defendant had also closed his; we regard this as a matter of practice, subject to the sound discretion of the Court presiding over the trial, and, as in this case, the defendant was offered an opportunity of adducing further evidence, and especially as there is not even an allegation of surprise, we see no ground for considering this slight departure from the ordinary practice as an abuse of discretion on the part of the Court, or as prejudicial to the defendant.

We are of opinion, however, that the Court erred in so much of the instructions given, on motion of the plaintiff, as undertake to lay down the criterion by which the jury were to determine whether, at the time of the sale of the slave in question, George Naylor was or was not of sufficiently sound mind to render the contract obligatory upon him and his representatives. This error infects the first and second instructions, but principally, the first, the substance of wich is, "that if, at the time of the sale, Naylor, from old age, infirmity, or other misfortune, was reduced to a state of mental imbecility which disqualified him from the *proper exercise of his reasoning faculties*, and the *ordinary prudential management of his affairs*, the defendant acquired no title by the purchase, and the virdict should be for the plaintiff."

PARTHER
*vs*
NAYLOR'S ADM'R

A record of another Court, finding plt'f's intestate to be of unsound mind, but which had been quashed for irregularity, tho' not competent to prove incapacity to contract. Yet, such a proceeding, carried on with the knowledge of one contracting with such person, was competent to show his knowledge of his state of mind.

It is a question of practice, and in the sound discretion of the Ct. to admit or reject testimony, after each party has declared *that they were thro' their evidence,* which will not be controlled by this Court unless it be abused and the other party be surprised.

The first and 2nd instructions given for plaintiff erroneous.

PRATHER
*vs*
NAYLOR'S ADM'R

Instruction ask-
ed for by def't.

It is contended by the counsel for the plaintiff in error, who was the defendant to the action, and an instruction was moved for, to the effect that no imbecility short of idiocy or lunacy should, in the absence of all fraud or imposition, invalidate the sale. But idiocy or lunacy invalidates a contract only because one of the essentials of a valid contract, the assent of a capable mind is wanting, and as the mind may and does become incapable, from other causes or in other modes than by idiocy or lunacy, the invalidity of the contract must, also, in such cases, be the proper consequence of such mental incapacity.

. We acknowledge, however, the difficulty of defining with accuracy, and in terms which would be alike understood by all rational men, the exact limits of that incapacity which disqualifies an individual from binding himself by contract. And the objection to the instruction before us is, that its terms are too general and vague, and might probably be understood as embracing classes of individuals who cannot be regarded as incompetent. An individual who is deprived of his reasoning faculties, or who cannot exercise them at all, is undoubtedly of unsound mind. But a man may have them, and be able to exercise them, and yet may be disqualified from exercising them *properly,* in all cases, without being, in a legal sense, a man of unsound mind.

It is error to in-
struct the jury
that one is dis-
qualified to con-
tract, when 'from
old age, infirmi-
ty, or other mis-
fortune, he was
reduced to a state
of mental imbe-
cility, which dis-
qualified    him
from the proper
exercise of his
reasoning facul-
ties, and the or-
dinary  pruden-
tial management
of his affairs,'
is improper, it
is   too   indefi-
nite and uncer-
tain.—

Madness itself is not necessarily inconsistent with a high excellence of the mere power of ratiocination, and many individuals of sound mind and good judgment in the affairs with which they are conversant, might be regarded as very deficient in the faculty of reasoning. Old age doubtless may, and often does, so impair the understanding as to incapacitate the individual for managing his affairs, or for making a contract. It almost always weakens the intellect, in some degree, and impairs, to a greater or less extent, all the mental faculties.

It might be very injurious to the rights of old men, and to the interests of individuals transacting business with them, to say, that whenever they are disqualified by age from the *proper* exercise of their reasoning faculties, they are to be regarded as being of unsound mind. Nor is the criterion of unsoundness, implied in the instruction, ren-

dered more safe, in our opinion, by the additional requisition that the individual should be disqualified from the *ordinary prudential* management of his affairs. Even ordinary prudence is not a necessary constituent of soundness of mind.

The case of *Naylor's children* vs *Naylor and wife, &c.* 4 *Dana*, 339, has been referred to in support of the instruction as given, and it is true that in the reasoning of the Court in that case, phrases very similar to those contained in the instruction, are made use of. But it is to be observed that the question in that case was not upon invalidating a contract already made, but upon interposing to prevent the individual from having the future management and disposition of his property, and upon shielding him, by the guardianship of the law, from those frauds and impositions to which his imbecility exposed him. And even in that case, when the Court come to state explicitly the case in which the Chancellor should exercise his power of protection, they say: " A clear case must be made out (upon the inquisition) of *non compos mentis*, or mental incapacity to manage his own concerns." And on looking into the statement of the facts in that case, it will be seen what facts were regarded as sufficient to show that the individual was incompetent, from old age, to manage his own affairs.

If the invalidity of the sale in this case had been made, by the instruction, to depend upon the belief of the jury, from the evidence before them, that Naylor, at the time of the sale, was, by old age, infirmity, &c. reduced to such a state of mental imbecility as to be mentally incapable of managing his own concerns, or mentally incompetent to manage his own affairs, or his ordinary affairs, we think there could have been no good objection to the proposition. And we are not sure that any attempt to define more explicitly, as matter of law, the degree or kind of mental imbecility which should invalidate the sale, or to characterize, as matter of law, the sort of capacity or incapacity for managing his affairs, or the sort of management of which he should be capable or incapable, might not be calculated rather to mislead and bewilder a jury,

It will be proper to say that "one who, by age or infirmity, is reduced to such a state of mental imbecility as to be mentally incapable of managing his own concerns, or mentally incompetent to manage his own affairs, or his ordinary affairs," is incapable of contracting—a more particular deffinition might be calculated to mislead, (*argu.*)

than to enlighten them with regard to the very point in question.

It may be true that if the individual had, by old age, &c. been entirely deprived of judgment, or of reason, or of memory, or of the faculty of perceiving or noticing what was occurring in his presence, or of the faculty of volition, he should be deemed incompetent to contract.  But if this conclusion be true, from the premises assumed, it must be held true, not merely because the mind itself is imperfect, if deprived of any one of these faculties or of the power of exercising any one of them, but because the total deprivation of any one of them renders the individual mentally incapable of governing himself and his affairs.  And so, if it be true that any partial deprivation of any one or all of these faculties, or of the use of them, renders the individual incompetent to contract, it is so not because the law fixes upon any particular degree of deprivation, as incapacitating him from contracting, but because the deprivation actually existing in the particular case, renders him, in fact, incompetent to govern himself and his affairs.

The law furnishes no enumeration of the mental powers, and no scale of the degree in which they must exist or be exercised, as a criterion of mental capacity or incapacity, but rests the criterion upon the question, whether the individual is mentally competent to the rational government of himself and his affairs, and leaves this question to be determined, not by any direct inquiry into the internal state of the mind or of any of its qualities, but by the conclusions of common sense, observation, and experience, when applied to the indications of mental competency, as exhibited in the facts of the particular case.

By the rational government of himself and his affairs, we mean such government as implies, not necessarily, skill, or even prudence, but a moderate comprehension of his immediate duties and relations, and of the value and uses of his property; a consideration of these things in his acts affecting them, and a direction of his acts by his own will.

We are aware that this general exposition might not be concurred in by all, and that it might be understood and

applied by others in a manner different from that in which we should understand and apply it ourselves. But this is a difficulty inherent in the subject, and which increases in proportion as one attempts to penetrate more deeply into the mind, and to point out by definition, the exact state of any or of all the faculties which constitutes unsoundness.

But although all rational men might not concur in a verbal definition of what constitutes unsoundness of mind or incapacity in the individual to govern himself and his affairs, we do not doubt that, for all practical purposes, there is a sufficient concurrence in the conception of what constitutes such incapacity, and that there is a greater concurrence of conception, and less danger of misapprehension on this point, than there would be in any definition which would involve the direct inquiry into the degree or manner in which any particular faculty of the mind existed or could be exercised. And we think it safer, especially in a case where the unsoundness of mind, if it exists, is the consequence of old age or other similar cause, that the inquiry by the jury should be, in substance, whether the individual was or was not mentally competent to the rational government of himself and his affairs.

Certainly where the contract has been executed on both sides, and a full consideration paid for the transfer of property, such a transaction ought not to be invalidated with the effect of subjecting one of the parties to the entire loss of the whole consideration upon any nice point of metaphysical subtlety or of abstract philosophy. The question of competency, in such a case, should be subjected to a test which may be fully comprehended by the triers, and which will bring it directly within the scrutiny of their common sense, as derived from common observation and experience.

And as actual incompetency, arising from old age, would seem necessarily to imply such a prostration of intellect as would be made palpable by many external indications, we should think that in such a case especially a plain and easy test might be furnished for determining the capacity or incapacity of the individual; and such a test too, as would properly determine whether a contract,

fair in its terms, should be avoided, to the injury of one of the parties, on the ground of the imbecility of the other.

The second instruction asked for by the defendant and refused, was inconsistent with this opinion, and the fourth was properly refused, because, so far as it is not given in the fifth, it refers to facts, of the existence of which there seems to have been no evidence before the jury.

But for the error in the first and second instructions, given on motion of the plaintiff, the judgment in reversed, and the cause remanded for a new trial in conformity with this opinion.

*Hewitt and Bradley* for plaintiff: *Harlan, Daviss and Breck* for defendant.