# Wrenn v. Burch (two cases).

February 13, 1951.

Rehearing Denied March 23, 1951.

W. J. Baxter, Judge.

D. L. Pendleton for appellant.

Harvey T. Lisle and Shumate & Shumate for appellee.

VAN SANT, COMMISSIONER—Affirming.

Broadway Street, a boulevard in the city of Winchester runs east and west. Highland Avenue runs north and south and intersects Broadway. At about 6:30 p. m. on December 18, 1947, appellees, Henry Burch and his wife, Mattie Burch, the former driving, were proceeding west on Broadway. Appellant, J. T. Wrenn, was driving his automobile south on Highland. The cars collided at the intersection. At the moment of collision the Burch car was being steered in a south-westerly course. It was struck on its right side between the door and bumper. It came to rest on Highland headed east. The Wrenn car was struck on the left front light, fender, and wheel, and came to rest on Broadway headed in a westerly direction. The Burches filed separate actions against Wrenn for recovery of damages sustained in the accident. The jury found for them and pursuant to the verdict, judgment was entered in favor of Mr. Burch in the sum of $18,832.60 and Mrs. Burch in the sum of $18,341.55. Wrenn has appealed from both judgments and the appeals have been consolidated for review in this court.

Appellant contends (1) he was entitled to a directed verdict at the close of the evidence, because the physical facts establish the negligence of Henry Burch as being the sole cause of the accident; (2) the verdicts are excessive; and (3) the court erred in his instructions to the jury.

On Highland, 54' north of the intersection, a stop sign had been erected as a warning to persons driving thereon to bring their cars to a stop before entering the intersection. Wrenn admits he did not stop before entering the intersection, but attempts to excuse himself by

claiming that he was unfamiliar with the city, having resided there but a short time before the accident, and that he did not see the sign. He testified, however, that as he approached the intersection he slowed the speed of his car to 12 or 15 miles per hour, looked both ways but did not see the Burch car except as a blur at the moment of the collision, although admitting there was no obstruction to his view. Mr. Burch was knocked unconscious as a result of which his memory of events at the time of the accident and for several minutes before was entirely obliterated. He had been blind in his right eye from infancy and the Wrenn car was approaching him from his right side. Mrs. Burch testified that when she saw the Wrenn car enter the intersection she warned her husband of its approach but he had already swerved to his left in an apparent effort to avoid the accident. The Burch car proceeded in its changed course, striking a telephone pole and coming to rest approximately 75' from the point of impact. Mr. and Mrs. Burch were thrown from the car when it struck the pole and both were knocked unconscious. The Wrenn car came to rest about 30' from the point of impact and facing at right angle to its original course. Sidney Epperson, a Deputy Sheriff of Clark County, testified that he was a City Policeman on the day of the accident. He was driving a pickup truck and traveling on Highland in the same direction as Wrenn at a speed of 15 or 20 miles per hour. About 200' before he arrived at the intersection Wrenn overtook and passed him, traveling at a speed of 35 to 40 miles per hour. He stated that Wrenn entered the intersection without slowing, and at which time the Burch car was in the intersection in full view. Jesse Gravitt operated a filing station at the corner of Broadway and Highland and saw the cars as they struck. He testified that Burch was traveling at a speed of 15 or 20 miles per hour and Wrenn at 45 to 50. Edward A. Baber, who worked at the filling station, stated the Burch car was traveling from 15 to 20 miles per hour and estimated the Wrenn car at a speed of approximately 40 miles per hour. James Scott was standing at the corner of Highland and Broadway and saw the accident. He stated the Burch car was traveling 15 or 20 miles per hour and estimated the Wrenn car was traveling at approximately 30 miles per hour at the time of the accident. He stated that the Wrenn car did not slow up from the time he first

saw it until it entered the intersection and struck the Burch car.

The physical facts merely show that the Burch car, having swerved to its left, continued its course for a distance of approximately 75', during which time it struck, and was deflected to the east by a telephone pole. The top of the car is the only portion thereof which came in contact with the pole. We think the physical facts not only fail to contradict, they actually support, the witnesses whose testimony we have related. The force of the impact could have been sufficient to have driven the Burch car the distance it traveled after the accident. It was struck in such a manner as to increase its speed in the direction it was turned. The impact caused the Wrenn car to travel a course at right angle to its original course. Whereas the impact knocked the Burch car forward, it necessarily slowed the speed of the Wrenn car and would have halted its progress altogether had it not been traveling at an excessive speed.

The jury separated its findings for Mr. Burch as follows:

| | |
|---|---:|
| For loss of time, | $ 2,970.00 |
| For physical pain and mental suffering, | 5,000 |
| For permanent reduction of earning capacity, | 6,175.00 |
| Damages to automobile, | 400.00 |
| For loss of services and society of wife, | 3,500.00 |
| For doctor, hospital, nursing and medical bills | 787.60 |
| Total | $18,832.60 |

The verdict in favor of Mrs. Burch was not itemized. Her prayer for damages was for $5,000.00 for loss of time and $30,000.00 for permanent injuries.

Mr. Burch was earning approximately $50 per week at the time he was injured. He had been unable to work for sixteen months previous to the trial. It is obvious that $2,940.00 is not excessive for loss of time. He was unconscious for a period of three weeks after the accident. He remained a month in the hospital and didn't remember just how long he was confined to his bed at home but "he was up and down for quite a while." He testified that he has lost his energy and strength, his back constantly aches, and he is not getting better. His arm gave him considerable trouble but was better at the time

of the trial. His memory has been impaired. He fails to remember meeting people and cannot calculate or figure accurately nor as fast as he could before the accident. His head feels like it "wants to expand and swell." His attending physician testified that he sustained a fractured shoulder, lacerations on his scalp and ankle, contusions on his shoulder and arm, multiple bruises and abrasions on his body, and that he is permanently injured. Under this evidence it is obvious that $5,000.00 is not excessive for physical pain and mental suffering. At the time of the accident, Mr. Burch was 46 years of age. His life expectancy was 23.62 years. $6,175.00 for the permanent reduction of his earning power, in our opinion, is conservative. The $400.00 allowed for damages to his automobile is within the limits of the evidence, and no question is or can be made concerning the doctor, hospital, nursing, and medical bills. Nor do we think that $3,500.00 was excessive for the loss of services and society of his wife, as will be seen when we detail her injuries.

Mrs. Burch testified that she received a deep cut on the side of her head from halfway above her ear to the top of her head. There was a large skinned place over her left eye. The right eye was tender and blue, and dirt was buried in the right cheek, which was skinned. She received severe injuries to the flesh and bones at her elbows. Her right hand was damaged badly at every knuckle. Her right eye gave her considerable pain for quite a while but has about healed. Her vision was affected for a good while and she has had constant headaches. Her right hand is very sore and she is unable to use it efficiently. She cannot type as fast as she previously could. Her pelvis was broken in three places and has constantly hurt her, especially in cold weather and when she is walking. The end of her spine gives her pain when she sits on anything hard. Her hip was thrown out of alignment and has remained so with no curvature in it. Both of her knees were injured and one has a long pone on it; they pain her constantly. Flesh was gouged out of her left foot and it now pains her as if the arch had been broken. Both of her ankles pain her but her right one is the worse: it received a deep ragged cut and was crushed at a place she displayed to the jury. For many months she could not hold her toes up but they are better now. She previously walked like a nor-

mal person but now is unable to do so: her leg seems to drag, and she loses her balance, as a result of which she has been caused to fall. Her nervous system has been shocked and she is unable to do her usual household chores or even to dress without assistance. After she left the hospital she was sick at her stomach and could not retain water for several days; a long time expired before she had any appetite. She was not working at the time of the accident but previously had worked, at which time she earned approximately $2,000.00 per year. Her life expectancy was 22.51 years. Her doctor related that the injuries she sustained and related were caused by the accident and he was of the opinion that she would not improve "in any appreciate amount after this length of time." He stated that her power to earn money has been permanently impaired. We are of the opinion that the evidence supports the jury's award to Mrs. Burch and that the extent of her injuries sustain the award to Mr. Burch for the loss of her services and society to the amount assessed.

But it is insisted by counsel for appellant that the husband should not be allowed to recover for the loss of services of his wife "if the wife is allowed damages for the impairment of her services to earn money." This argument is ingenious but, we believe, unsound. A wife, earning relatively large sums of money in the business world, may, and usually does, render to her husband services and social comfort totally unrelated to her outside activities. The loss or curtailment of her power to earn money in the business world operates to her damage, whilst the loss to her husband of her services and society operates to the damage of the husband. Thus it will be seen that an award to her for permanent injuries does not "overlap" the award to her husband for the loss of her services and society; consequently, the two recoveries do not constitute a double allowance for the same loss.

Finally, complaint is made that the court erred in drafting and presenting to the jury with the instructions a form for returning a verdict, in the event the jury should find for the plaintiff. The form merely set out the items of damage allowable with blank spaces opposite each item to be filled in by the jury, in the event the jury found for the plaintiff. It is argued that the

schedule so prepared by the court and placed in the middle of the instructions was a suggestion to the jury that the court was of the opinion the verdict should be for the plaintiff. We do not agree with this contention. The instructions plainly stated that the schedule was to be used only if the jury, from the *evidence*, found for the plaintiff. It was a mere suggestion of the court as to how the jury should make separate findings for the various items of damage, in the event, but only in the event, the jury should find for the plaintiff. We find no error in the record.

The judgment is affirmed.