John Nelson INSKO, Appellant,

v.

Opal Lee CUMMINS et al., Appellees.

Court of Appeals of Kentucky.

Jan. 19, 1968.

James A. Nolan, Ware, Bryson, Nolan & West, Covington, for appellant.

John A. Diskin, Benton, Benton, Luedeke & Rhoads, Newport, for appellees Opal Lee Cummins and Donald L. Cummins.

Donald Johnson, Newport, for appellee Gerald Allen Blust.

EDWARD P. HILL, Judge.

The verdict and judgment awarded appellee Opal Lee Cummins $10,000 for personal injuries and her husband, Donald L. Cummins, $2,000 for loss of the companionship and consortium of his wife, Opal Lee, jointly against appellant John Nelson Insko and appellee Gerald Allen Blust. Only Insko appeals.

In a 1957-model Ford, in broad daylight on the afternoon of June 3, 1964, appellant John Nelson Insko was traveling south on U. S. 27 just north of its intersection with Alexandria Pike within the city limits of Cold Spring, Kentucky. Appellee Gerald Allen Blust was following Insko in his white 1955-model Cadillac. Anywhere from 50 to 200 feet north of the electric overhanging signal light at the intersection, Insko slowed or stopped his Ford car in anticipation of striking a cyclist. Blust almost ran into the rear of the Ford but missed doing so by cutting his car to the right of the Ford so that when he stopped, his left front fender was within inches of and to the right of the right rear corner of the Ford. We estimate the distance mentioned above for the simple reason that we do not have the benefit of a map or drawing. The parties used a blackboard and the witnesses referred to points "right here" and "right there" on the blackboard in the trial court, which is of no earthly benefit here.

Insko said he slowed down when he saw the cyclist; Blust says Insko stopped. Really this point of conflict is unimportant. At any rate, when the cyclist turned off the highway, Insko proceeded on. After entering the intersection, Insko said he looked up, saw that the signal light was red, and immediately stopped. By this time Blust had turned his white Cadillac back into the line of traffic and was again following Insko. Apparently he was so close behind that when Insko stopped Blust ran into the rear of the Ford. Slight damages resulted to the two vehicles, but appellee Opal Lee Cummins, riding in the rear seat of the Ford as a paying passenger, claims to have received a "whiplash" injury to her neck and back, resulting in pain, loss of time, and some permanent disability. Her total medical expenses amounted to $2,276.55, and she was off work for nearly two months.

The evidence is pretty clear that after the wreck the Ford was about 18 feet north of the signal light. Blust contends

that Insko could not have seen the red light from this position. However, allowance must be made for the distance Insko traveled from the time he says he saw the red light until he placed his foot on the brake and came to a stop. So, it is clear from the record that Insko was anywhere from 18 to 36 feet north of the red light when he discovered the red stop signal.

There was credible evidence that a white cross mark, ten inches wide, was painted across the street some distance from the signal light. This distance was fixed at 50 feet by a policeman of the city of Cold Spring. Insko did not stop at this line possibly because of the distraction caused by the cyclist.

The jury found against both Insko and Blust.

Appellant Insko presents his grounds for reversal in four categories: (1) He argues that the trial court erred in overruling his motion to discharge the jury and continue the case when counsel for Blust asked a prospective juror on *voir dire* examination whether he was involved in "insurance" business in connection with his real estate business; (2) that he was entitled to a directed verdict; (3) that the verdict is excessive; and (4) that the trial court erred in allowing the Cumminses to reopen their case after their counsel had announced he had finished.

■ First we consider the question of whether there was prejudice against Insko by reason of the mention of "insurance" as contended by appellant. It should be noted that the question was asked by counsel for Blust, not by counsel for the Cumminses. The juror being interrogated at the time stated he was engaged in the real estate business, and then counsel for Blust asked the juror if he was also engaged in the insurance business. In Ashland Sanitary Milk Co. v. Messersmith's Adm'r, 236 Ky. 91, 32 S.W.2d 727 (1930), we find a similar factual situation, except that in Messersmith there was a little more reference

to "insurance." We said in Messersmith and repeat in the present case that: "We therefore hold that the trial court did not err in refusing to discharge the entire panel." See also Wheeler v. Sullivan, 260 Ky. 814, 86 S.W.2d 1023 (1935).

■ Litigants have a wide latitude in the matter of *voir dire* examination of prospective jurors. Especially is that true in cities or urban areas where attorneys are not and cannot be acquainted with all the jurors. But insofar as bringing into the picture the fact that some party in litigation has insurance coverage, the attorneys are held to the utmost good faith. Usually this question of good faith, or lack of it, is one for the trial judge to determine in the exercise of sound discretion. Cf. Helton v. Prather's Adm'r, 272 Ky. 574, 114 S.W.2d 1120 (1938).

Was appellant entitled to a directed verdict? In resolving this question we must disregard the negligence of Blust since he undoubtedly was guilty of fault as the jury found and he has meekly accepted the verdict.

■ In order to determine whether appellant was proven guilty of negligence, let us look further at all the circumstances. U. S. 27 at and north of the point of collision was a four-lane highway. It was reduced to a two-lane highway at the intersection mentioned above. An apparatus was embedded in Alexandria Pike, near the intersection with U. S. 27, that triggered both signal lights at the intersection so that traffic desiring to enter U..S. 27 might do so. Appellant traveled this highway weekdays on his way to work and must have been familiar with the situation. He crossed the white line north of the signal light, where he should have stopped. He proceeded on under circumstances hazardous to himself, to traffic entering from Alexandria Pike, and to traffic following him. All circumstances indicate that he must have made a sudden stop, which could have been a contributing cause of the accident. At any rate the jury so

found, and we are reluctant to upset the jury's findings.

It should be noted here in connection with the location of the "white line" mentioned above that Lt. Frank Kramer, a policeman of Cold Spring, testified the white line was located about 50 feet north of the signal light. Blust testified it was 166⅔ feet north. Regardless of how far north of the signal light it was located or for what purpose, the fact remains that appellant Insko was fast approaching a point of "no return" in the intersection when he suddenly applied his brakes and stopped.

It is concluded the question of Insko's negligence was one for the jury and that the trial court did not err in overruling appellant's motion for a directed verdict at the conclusion of all the evidence.

The adequacy or excessiveness of verdicts is always a difficult question.

■ In the present case, the jury had ample evidence from which to conclude that appellee Opal Lee Cummins sustained an injury at the time of the accident; that previous to the injury she was active, enjoyed life, and was athletic to the extent that she danced and bowled; she actually did some farm work in addition to helping with the housework after her regular working hours. She was confined in the hospital for about three weeks and was off work for nearly two months. Her medical expenses, to repeat, amounted to $2,276.55.

Appellant made no effort to have her examined by a physician of his own choosing. Her habits, disposition, and personality underwent a change after her injury. She sustained from "15 to 25%" disability.

In the face of such evidence, we cannot say a verdict of $10,000 is excessive.

By the same token, we do not consider the $2,000 verdict in favor of Donald L. Cummins for loss of companionship and consortium to be excessive. Cf. Robenson v. Turner, 206 Ky. 742, 268 S.W. 341 (1925), and Wrenn v. Burch, Ky., 314 Ky. 844, 236 S.W.2d 924 (1951). Each case must rest upon its own facts. Roland v. Murray, Ky., 239 S.W.2d 967 (1951), and Bruner v. Gordon, 309 Ky. 29, 214 S.W.2d 997 (1948).

■ Appellant's final ground for reversal questions the propriety of the ruling of the trial court in permitting the Cumminses to introduce a witness after announcing through with their evidence. We find no prejudice to appellant from this ruling of the court. Anyway it was within the sound discretion of the trial court to permit the introduction of the additional witness even after the Cumminses had closed their case. Cf. Western Union Tel. Co. v. Parsons, Ky., 72 S.W. 800, 24 Ky.Law Rep. 2008 (1903), and Hacker v. Rader, 309 Ky. 579, 218 S.W.2d 404 (1949).

The judgment is affirmed.

All concur.