RENDERED:  JUNE 12, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0822-MR

ESTATE OF MATTHEW A. GADD,
BY NANCY GADD, EXECUTRIX                                    APPELLANT


APPEAL FROM BOONE CIRCUIT COURT
v.            HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
ACTION NO. 21-CI-01202


JASIAH A. TANNER AND
KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, A. JONES, AND L. JONES, JUDGES.

ECKERLE, JUDGE:  This matter arose from an automobile accident between

Matthew A. Gadd ("Gadd") and Appellee, Jasiah A. Tanner ("Tanner").  Although

Gadd originated the suit as Plaintiff, Appellant, the Estate of Matthew A. Gadd by

Nancy Gadd, Executrix ("the Estate"), substituted Gadd as the party-Plaintiff

following his death due to an unrelated cancer. The Estate appeals from the Boone Circuit Court's Judgment on Directed Verdict issued on June 18, 2025, and the Court's Order on Motion for Costs dated August 4, 2025 (collectively, "Orders"). The Estate, having failed to present a *prima facie* case for negligence, and Tanner, being entitled to costs as the successful party, we affirm.

### Factual and Procedural Background

Approximately five years ago, on May 26, 2021, Gadd and Tanner were involved in an automobile accident at the intersection of Old Union Road and Orleans Boulevard in Florence, Kentucky. Tanner, who was 16 years of age and driving on a temporary learner's permit, stopped at a stop sign before turning left from Orleans Boulevard on to Old Union Road. Tanner's mother, Sarah, was a passenger. Gadd was traveling south on Old Union Road when his and Tanner's vehicles crashed. Apparently, police were called to the scene, and an officer issued a Kentucky Uniform Police Traffic Collision report, dated May 26, 2021, which was not addressed at trial (and would not generally have been admissible). No airbags deployed; no party required medical treatment; and both parties drove away from the incident.

On the following day, May 27, 2021, Gadd visited St. Elizabeth Hospital's emergency room ("ER") for lumbar strain. After prescription pain medication, iced treatment, and rest at home did not relieve his pain, on June 17,

2021, Gadd saw an orthopedist, who ordered an x-ray of his back and directed him to follow-up with his practice, Beacon Orthopaedics and Sports Medicine ("Beacon").  Although he waited one month for the scheduled appointment, Gadd did return to the ER for continued back pain during that time.

On July 17, 2021, Gadd saw Dr. David Sower ("Sower") at Beacon. Relying almost exclusively on Gadd's patient history and self-reported back and leg pain symptoms, Sower diagnosed Gadd with a lumbar injury and radiculopathy resulting from a herniated disc after the accident.  Deposition ("Depo."), Sower at 10.  Sower treated Gadd with medication, therapeutic exercises, and an epidural injection for pain.  Depo., Sower at 7.  On August 6, 2021, Gadd received an MRI, which revealed lesions on his spine.  Following this medical revelation, Gadd underwent a bone scan, and on August 26, 2021, was diagnosed with metastatic lung cancer that had spread to the bones in his back, hips, and femur.  Tragically, despite subsequent oncology treatment, radiation, and surgery, Gadd died on December 31, 2021.  His cause of death, confirmed by his widow at trial, was stage-four lung cancer.  Video Record ("VR"), 6/12/2025, at 1:40:30.

On August 6, 2021, only weeks prior to his diagnosis, Gadd filed his negligence suit against Tanner and Appellee, Kentucky Farm Bureau Mutual Insurance Company ("KFB"), where Tanner held a policy for underinsured benefits ("UIB").  Trial Record ("TR") at 1-5.  Gadd alleged that he sustained

-3-

damages that exceeded the policy limits, entitling him to statutory UIB and excess damages exceeding the jurisdictional minimum. TR at 4. On May 3, 2022, the Trial Court issued an order substituting the Estate as party-Plaintiff. TR at 22. Discovery ensued, including depositions of Sower, Tanner, and Tanner's expert witnesses.[1]

On February 22, 2024, the Trial Court issued an Order bifurcating Gadd's underinsured motorist ("UIM") claim against KFB from the trial, which commenced on June 12, 2025. The Estate called the following witnesses: Nancy Gadd, Executrix of the Estate and widow of Gadd; Martha Gadd, Gadd's mother; and Joe Lonnemann and Dennis Fabiani, Gadd's brothers-in-law. By agreement of the parties, the Estate also presented the video deposition of Sower and read into the record the deposition testimony of Matt Andrews, Gadd's employer. Gadd's widow testified that Gadd's car, a 2011 Toyota Camry, was totaled after the accident but did not produce an estimate of the damages or comparative value. VR, 6/12/2025, at 12:35:50 and 1:23:00. She and the other listed family members testified regarding Gadd's level of activity prior to and after the accident and described their observations of his pain. However, Gadd's employer's deposition testimony, as well as his family's testimony, confirmed that Gadd reported to work

---

[1] Tanner did not call either of his two expert witnesses at trial, and he did not introduce their depositions. Similarly, Tanner's response to interrogatories was not introduced at trial. Therefore, these records are not included in the TR on appeal.

regularly with no loss of pay or medical leave between the date of the accident in May until his cancer diagnosis in late August. Sower's video deposition presented his diagnosis of Gadd's lumbar radiculopathy caused by a herniated disc and subsequent treatment before Gadd's cancer diagnosis. VR at 2:44-3:16.

After the presentation of Sower's video deposition, the Trial Court conducted a bench conference, during which it asked the Estate if it had any additional witnesses and asked for a summary of Tanner's anticipated witnesses. VR at 3:16-3:19. Upon returning on the record, the Trial Court asked, "Plaintiff, do you have any additional witnesses you wish to call?" VR at 3:19:50. Counsel for the Estate stated, "I do not, your honor." *Id.* With that response, the Trial Court addressed the jury, stating the following: "That means plaintiff has rested its case." VR at 3:19:55. The Estate did not object or contradict the Trial Court's statement. The Trial Court released the jury for the day.

After the jury's departure, Tanner moved for a directed verdict pursuant to Kentucky Rule of Civil Procedure ("CR") 50.01, arguing that the Estate had failed to present a *prima facie* case of negligence. VR at 3:22:25-3:24:20. Specifically, Tanner argued that, in the absence of evidence of duty or breach, the Estate had failed to meet its burden of proof, and the Trial Court was required to declare a directed verdict. *Id.* In response, the Estate communicated that there may have been a misunderstanding, but that it should not be expected to

"officially rest" until after Tanner and her mother had testified. VR at 3:24:20-37. Further, while conceding that Tanner and her mother were its only "liability" witnesses, the Estate contended that they were not under its control, and the Estate had planned to obtain their testimony after the witnesses were called by Tanner. VR at 3:25-3:29. Tanner responded that she did not bear the burden of proof and, pursuant to the rules of trial procedure, the Estate should not have the ability to present affirmative evidence to the jury after it rested its case. VR at 3:24-3:25. The Trial Court communicated that it understood that the Estate had clearly rested its case and was inclined to grant the motion for directed verdict. However, the Court gave the Estate until the following day to research the law and present further arguments.

On June 13, 2025 (which was to be the second day of trial), the Estate presented caselaw purporting to allow a Trial Court to reopen a plaintiff's case provided that it does not cause undue surprise or prejudice to a defendant. VR, 6/13/2025, at 8:06:20-30. The Estate argued that, because it identified Tanner as its liability witness in an email to her counsel, there was no surprise or prejudice. VR at 8:06:54. Finally, it lamented that if the Trial Court did not reopen the case, the Estate and executrix, Gadd's widow, would not have "her day in Court." VR at 8:07. Tanner disputed the Estate's arguments and caselaw, contending that CR 43.02 clearly sets the order of procedure for the trial and that, after Plaintiff rested

its case without meeting its burden of proof, upon a motion pursuant to CR 50.02, the Trial Court was compelled to award a directed verdict. VR at 8:19-20.

After hearing arguments from the parties, the Trial Court observed that, in addition to not meeting its burden to present evidence of duty or breach, the Estate had also tendered failing jury instructions, which did not establish any questions or queries concerning Tanner's liability. VR at 8:21-35. Thus, the Trial Court stated that the Estate's omissions were suggestive of "a feature and not a gaffe." VR at 8:21:40. Further, the Court addressed *sua sponte* the Estate's failure to meet the statutory minimum of $1,000 in medical expenses or proof of a permanent impairment. VR at 8:22:20. The Trial Court found that, even if it were to reopen its case, the Estate did not establish a *prima facie* case of negligence and could not, as a matter of law, meet a "threshold verdict." VR at 8:22-8:24. Therefore, the Trial Court granted Tanner's motion for directed verdict and denied the Estate's motion to reopen its case. VR at 8:24:50.

Five days later, on June 18, 2025, the Trial Court memorialized its prior oral decision by written Order granting a directed verdict in Tanner's favor. Thereafter, pursuant to CR 54.04, the Trial Court awarded Tanner her reasonable costs totaling $3,917.13. The Estate appeals from both Orders.

## Analysis

### I. Reopening the Case

The Estate focuses its appeal primarily on the Trial Court's denial of its request to reopen its case and allow it to present additional evidence. The "order of presentation of proof during a trial" is governed by CR 43.02. *Fraser v. Miller*, 427 S.W.3d 182, 184 (Ky. 2014). Our Supreme Court has summarized the application of CR 43.02 as follows:

> The rule makes clear that the party with the burden of proof must first produce evidence and should "exhaust his evidence before the other begins." CR 43.02(c). The rule further permits the trial court to allow the parties to rebut evidence "for good reasons in furtherance of justice." CR 43.02(d). It is within the sound discretion of the trial court to regulate the order of presentation of proof during a trial. *Commonwealth, Dept. of Highways v. Ochsner*, 392 S.W.2d 446, 448 (Ky. 1965). The test to determine if the trial court abused its discretion is to ask whether its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

*Id.* Accordingly, we review for abuse of discretion the Trial Court's denial of the Estate's request to reopen its case. *Id.*; *see also Logan v. Logan*, 432 S.W.2d 34, 35–36 (Ky. 1968).

The Estate advances two complaints for its assertion that the Trial Court abused its discretion. First, the Estate argues that it did not intend to rest its

-8-

case-in-chief. We note that the video record clearly refutes this claim. The Trial Court respectfully disabused the Estate of the notion that it somehow misunderstood the Estate's intention. The Estate very plainly advised the Trial Court at the bench and again on the record that it had no additional witnesses to call. Similarly, given the opportunity to object to the Trial Court's statement that it had rested its case, the Estate failed to do so. Finally, when Tanner initiated her motion for a directed verdict, the Estate made no initial objection to the order of procedure. Given that a party may only move "for a directed verdict at the close of the evidence offered by an opponent[,] . . . the party opposing the motion for directed verdict [has] an opportunity to present its proof prior to being foreclosed from doing such." *Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d 541, 551 (Ky. App. 2025) (citing CR 50.01). Had the Estate intended to call additional witnesses – such as Tanner herself whom the Estate had identified in an email as a liability witness – or otherwise introduce supplemental evidence, including its own deposition of Tanner, it should have taken this opportunity before, not after, Tanner showed her hand by clearly articulating and setting out her very specific grounds for a directed verdict. Thus, we affirm the Circuit Court's finding that the Estate had indeed rested its case.

Second, the Estate argues that, if it were determined that it rested its case, the Trial Court abused its discretion by failing to allow it to reopen its case to

-9-

cure the defects on which Tanner relied as grounds for her motion. Specifically, those grounds were that the Estate failed to introduce any evidence that Tanner owed Gadd a duty of care or that she breached such a duty. And, as the Trial Court observed, the Estate's neglecting to offer such questions in their proposed jury instructions demonstrated that this failure was not a mistake, but rather a central "feature" at the heart of the Estate's case. VR, 6/13/2025, at 8:21:40. In spite of this failure and without citing the proper rule of procedure, the Estate essentially argues that the Trial Court should have permitted it to offer additional evidence-in-chief "for good reasons in furtherance of justice." CR 43.02(d). Instead, the Estate cites a series of antiquated cases that clearly pre-date Kentucky's Rules of Civil Procedure.

For example, in *Louisville & N.R. Co. v. Jolly's Adm'x*, a Trial Court granted an estate administrator's motion to reopen the case to introduce additional evidence "after an argument had been addressed to the jury[.]" 232 Ky. 702, 23 S.W.2d 564, 567 (1930). Kentucky's Court of Appeals held that: "[t]he whole matter of reopening a case for further testimony rests in the discretion of the trial court . . . and [t]hat discretion is a judicial, not an arbitrary one, and this court will not interfere with its exercise unless it is palpably abused." *Id.* at 573–74 (citations omitted). The Court found that the plaintiff's presentation of additional evidence "caused no material delay, and the facts brought into the record were known in

-10-

advance to the defendant . . . [and] constituted no surprise and possibly prevented the necessity of another trial of the case." *Id.* at 573. Similarly, in *Insko v. Cummins*, a contributory negligence case involving an automobile accident, the Court of Appeals held that "it was within the sound discretion of the trial court to permit the introduction of the additional witness even after the [plaintiffs] had closed their case." 423 S.W.2d 261, 264 (Ky. 1968). Far from aiding the Estate here, however, both cases simply hold that whether to allow reopening of a party's case-in-chief, rather than to confine it to rebuttal evidence, falls squarely within the discretion of the Trial Court as CR 43.02 now provides.[2]

After the adoption of CR 43.02, the Kentucky Supreme Court has held that, if an appellant "had ample opportunity to introduce" evidence during its case-in-chief, a motion to reopen to "correct [its] failures . . . should not be permitted except in extraordinary cases to prevent a manifest injustice." *Logan*, 432 S.W.2d at 35–36. Moreover, in the case *sub judice*, the Estate sought to introduce additional evidence to cure the defects in its case only *after* Tanner clearly and specifically pointed out those failings. Allowing a party to reopen its case-in-chief under these circumstances would upend the "orderly" conduct of litigation and the

---

[2] One of the other cases that the Estate cites is *Prather v. Naylor's Adm'r*, 40 Ky. 244, 244 (1841), which is not only an older judicial decision but is clearly outdated, ill-fitting, and no longer relevant to our modern jurisprudence. Specifically, its facts relate to Kentucky's history of slavery, under which the legal conflict concerned the ownership and transfer of a human being trapped in bondage.

principle of fair play that ensures equitable legal proceedings for all parties. *Id.* at 35. Therefore, we hold that the Trial Court, which awarded the Estate extra time to research the issue and make its arguments, did not abuse its discretion in denying the Estate's request to reopen its case to call Tanner or her mother as principal witnesses or otherwise to present additional evidence.

## II. Directed Verdict

Next, we consider whether the Trial Court erred in granting Tanner's motion for a directed verdict. This Court explained the appropriate standard of review for a directed verdict in *Daniels v. CDB Bell, L.L.C.*, in which we stated:

> When a directed verdict is appealed, the standard of review on appeal consists of two prongs. The prongs are: "a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Bierman v. Klapheke*, 967 S.W.2d 16, 18–19 (Ky. 1998). "A motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made." *National Collegiate Athletic Ass'n By and Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 860 (Ky. 1988), citing *Kentucky & Indiana Terminal R. Co. v. Cantrell*, 298 Ky. 743, 184 S.W.2d 111 (1944).

300 S.W.3d 204, 215 (Ky. App. 2009). In conducting its review, an appellate court "must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party." *Bierman*, 967 S.W. 2d at 18 (citing *Meyers v. Chapman Printing, Inc.*, 840 S.W.2d 814 (Ky. 1992)). Put another way,

-12-

"a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge was completely erroneous." *Davis v. Graviss*, 672 S.W.2d 928 (Ky. 1984), *overruled on other grounds by Savage v. Three Rivers Medical Center*, 390 S.W.3d 104 (Ky. 2012).

"It is well-argued and documented that a motion for a directed verdict raises only questions of law as to whether there is any evidence to support a verdict." *Gibbs v. Wickersham*, 133 S.W.3d 494, 496 (Ky. App. 2004) (citing *Harris v. Cozatt, Inc.*, 427 S.W.2d 574, 575 (Ky. 1968)). Further, our jurisprudence provides that "[w]hile it is the jury's province to weigh evidence, the court will direct a verdict where there is no evidence of probative value to support the opposite result[,] and the jury may not be permitted to reach a verdict based on mere speculation or conjecture." *Id.* (citing *Wiser Oil Co. v. Conley*, 380 S.W.2d 217, 219 (Ky. 1964)).

In this case, the Estate was required to carry the burden, as a matter of law, to produce evidence of the mandatory elements for the tort of negligence: "(1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (citing *Pathways, Inc., v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) and *Mullins v. Commonwealth Life Insurance Co.*, 839 S.W.2d 245, 247 (Ky. 1992)). Therefore, "[t]he issue before the trial court at the close of appellant's case was

whether or not appellant sustained [its] burden of proving [its] claim by at least a scintilla of probative evidence capable of inducing conviction in reasonable minds." *Wyant v. SCM Corp*., 692 S.W.2d 814, 816 (Ky. App. 1985) (citing *James v. England*, 349 S.W.2d 359 (Ky. 1961)).

As Tanner pointedly states in her brief, the Estate presented "[n]o single piece of evidence . . . as to how the accident occurred, nor any evidence that Tanner breached any duty owed to [Gadd]." Appellant's Brief at 1. The Estate admitted that it intended to wait until after it closed its case to question Tanner, presumably on cross-examination, and make her its "liability witness." VR, 6/13/2025, at 8:06-8:07. However, while it had every opportunity to call Tanner, who was in the courtroom during the entirety of the Estate's case-in-chief, it simply chose not to do so. As this Court has observed:

> "Kentucky does not recognize a general 'universal duty of care' that goes 'beyond the most general expression of negligence theory.'" *New Albany Main Street Properties, LLC v. Stratton*, 677 S.W.3d 345, 351 (Ky. 2023) (quoting *Jenkins v. Best*, 250 S.W.3d 680, 691 (Ky. App. 2007)). Ordinary care is defined as "such care as a reasonably prudent person would exercise under the circumstances." *Wright v. House of Imports, Inc*., 381 S.W.3d 209, 213 (Ky. 2012) (quoting *Slusher v. Brown*, 323 S.W.2d 870, 872 (Ky. 1959)). Moreover, while the duty may be labeled "universal," it is not without bounds. *See T&M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 531 (Ky. 2006).

-14-

*Lhotsky as Next Friend for Lhotsky v. Sutcliffe*, 723 S.W.3d 842, 851 (Ky. App. 2025). Without presenting any facts concerning the automobile accident, which was the very subject of the negligence suit, the Estate provided absolutely no evidence upon which the Trial Court could assess what, if any, legally-cognizable duty Tanner may have owed to Gadd to address one of the required elements. *Patton*, 529 S.W.3d at 729.

Perhaps more significantly and shockingly, the Estate offered no evidence whatsoever regarding the other requisite elements of whether Tanner breached this undefined duty or whether her actions could be causally linked to Gadd's injuries. At best, and drawing upon all inferences in its favor, the Estate presented Sower's opinion that Gadd's back pain and radiculopathy "[were] brought on by the automobile accident." Depo. Sower, at 10, 16. However, that general evidence does not indicate that Tanner was liable for the accident. Moreover, Sower based his opinion solely on Gadd's patient history and x-rays taken roughly two months after the accident. Without evidence of what occurred leading up to the collision and immediately thereafter, "any jury conclusion would have been speculative or conjectural[.]" *Gibbs*, 133 S.W.3d at 496. Being presented with no evidence of what occurred during the accident, "a reasonable jury could only conclude that [Tanner – as the party without a burden of proof] was entitled to a verdict." *Holland*, 707 S.W.3d at 550 (citing *Buchholtz v. Dugan*, 977

-15-

S.W.2d 24, 26 (Ky. App. 1998)). Finally, as the Trial Court properly held, the Estate failed to establish by medical records or expert testimony the threshold medical expenses required by Kentucky law.[3] Therefore, "it [was] appropriate for [Tanner] to seek a directed verdict based on the failure to prove a single element of the whole." *Holland*, 707 S.W.3d at 551.

In light of the complete absence of proof of duty or breach and very limited evidence of causation despite several missed opportunities to do so, and as the Estate failed to establish threshold medical expenses, we find that there were no disputed issues of material fact on which reasonable minds could differ. Therefore, the Estate did not meet its burden to prove *prima facie* its claim of negligence, and the Trial Court properly granted a directed verdict.

---

[3] Kentucky Revised Statute ("KRS") 304.39-060(1)(b) provides that: "In any action of tort brought against the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required in this subtitle, or against any person or organization legally responsible for his or her acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits which are payable for such injury as "medical expense" or which would be payable but for any exclusion or deductible authorized by this subtitle exceed one thousand dollars ($1,000), or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least one thousand dollars ($1,000)."

-16-

### III.    Award of Costs

Finally, the Estate disputes the Trial Court's award of costs to Tanner in the amount of $3,917.  Prior to the jury trial and pursuant to CR 68, Tanner made an offer of judgment, which the Estate rejected.  After the Trial Court issued the directed verdict, Tanner sought reimbursement of her costs under CR 68 and 54.  In her motion for recovery of these costs, she included $3,570 in fees paid to her medical expert, Arthur Lee, M.D., and notified the Trial Court that she would later submit for reimbursement the fees paid to her engineering expert, Tyler Kress.  TR at 249-50.  Although not detailed in its written Order, the Trial Court awarded a sum that did not include Tanner's expert witness fees but awarded the remaining balance of $3,917.

The Estate takes exception with certain itemized expenses, which it argues are not specifically authorized for reimbursement under CR 54.  Specifically, it disputes the costs for a medical canvass, death certificate, litigation support services, and an expedited transcript of the Trial Court's hearing on Tanner's motion for directed verdict.  It also claims that Tanner's invoices for deposition transcripts did not distinguish between the original and certified copies and should be reduced by one-third.

CR 68(3) provides that, when a party makes a valid offer of judgment and "the judgment finally obtained by the offeree is not more favorable than the

offer, the offeree must pay the costs incurred after the making of the offer." CR

54.04(1) lists the types of costs and the criteria for recovery and provides that a

prevailing party is entitled to costs "unless the court otherwise directs." Costs

subject to award may include:

> [F]iling fees, fees incident to service of process and
> summoning of witnesses, jury fees, warning order
> attorney, and guardian ad litem fees, costs of the originals
> of any depositions (whether taken stenographically or by
> other than stenographic means), fees for extraordinary
> services ordered to be paid by the court, and such other
> costs as are ordinarily recoverable by the successful
> party.

CR 54.04(2). "'Significant discretion is clearly afforded the trial judge under the

plain language of this rule[,]' and we review the Trial Court's ruling on costs for

an abuse of discretion." *Hamilton v. P.B. Stratton Fam. P'ship, L.L.C.*, 709

S.W.3d 287, 319 (Ky. App. 2024), *review denied* (Apr. 16, 2025) (quoting *Lewis v.

Charolais Corp.*, 19 S.W.3d 671, 677 (Ky. App. 1999)).

This Court has previously opined that "[c]ase expenses should be

treated like attorney fees; that is, statutory authority must be given in order to

allocate such costs." *Shelter Mut. Ins. Co. v. McCarthy*, 896 S.W.2d 17, 19 (Ky.

App. 1995). Specifically, "[f]ees paid by a party to expert witnesses are not

recoverable as part of the cost of the action, unless specifically authorized by

statute." *Brookshire v. Lavigne*, 713 S.W.2d 481, 481 (Ky. App. 1986) (quoting 20

AM. JUR.2D Costs § 65 (1965)). Without specific statutory authority, Tanner's costs were limited to those recoverable under CR 54.04. Accordingly, the Trial Court properly disallowed recovery of Tanner's expert witness fees.

Regarding depositions, the invoices that Tanner submitted appear to bill one lump sum for the original and one certified copy, and no additional copies or alternate formats are billed. The expedited transcript Tanner sought directly related to the hearing on the motion for a directed verdict, during which the Estate disputed that it had closed its case. The remainder of the costs appear incident to the jury trial presentation, which are "ordinarily recoverable by the successful party" under CR 54.04 and specifically permitted under CR 68(3). Therefore, having reviewed the Trial Court's assignment of costs, we hold that there was no abuse of discretion.

## Conclusion

For the foregoing reasons, the Orders of the Boone Circuit Court issuing a directed verdict and awarding costs are hereby AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Larry Hicks
Edgewood, Kentucky

BRIEF FOR APPELLEE JASIAH
TANNER:

John M. Dunn
Bryce A. Madden
Ft. Mitchell, Kentucky